Points Decided.

(January 14, 1926.)

No. 4401.

IDAHO GRIMM ALFALFA SEED GROWERS' ASSO-
CIATION, a Corporation, Appellant, v. F. W. STRO-
SCHEIN, Respondent.

No. 4429.

F. W. STROSCHEIN, Respondent, v. IDAHO GRIMM AL-
FALFA SEED GROWERS' ASSOCIATION, a Cor-
poration, Appellant.

No. 4402.

IDAHO GRIMM ALFALFA SEED GROWERS' ASSO-
CIATION, a Corporation, Appellant, v. F. W. STRO-
SCHEIN, Respondent.

[242 Pac. 444.]

PLEADING AND PRACTICE—GENERAL DEMURRER—MARKETING AGREEMENT
—PERFORMANCE—ESTOPPEL.

1. Where parties enter into a contract by the terms of which
one of them binds himself to perform at the option of the
other upon being given written notice, the party having such op-
tion must exercise it in the manner provided by the contract.

2. In an action upon a contract for damages for its breach,
where such contract provides that one of the parties thereto is
bound to perform at the option of the other upon being given
written notice, in order for the party holding the option to state
a cause of action for its breach, he must allege that he gave the
required notice substantially in the manner provided by the op-
tion agreement, or that the giving of the notice was waived and
that both parties had expressly agreed to enter into the agreement
and be bound by its terms.

3. Where two parties agree that one of them, solely at the
option of the other, shall be bound for a term of years to sell
certain products to the other, under the terms of a specific mar-
keting agreement, upon the holder of the option exercising it by
giving written notice, neither party will be estopped to deny that
it is bound by the terms of the marketing agreement until the
holder of the option has exercised its right to purchase by giving
notice in the manner required by the option agreement. The party
holding the option not being bound to exercise it is not bound

by the marketing agreement until he does so, and the other party not having any right to demand its acceptance has no right that he can waive until it is accepted.

APPEAL from the District Court of the Sixth Judicial District, for Bingham County. Hon. Raymond L. Givens, Presiding Judge.

First action No. 4401 by appellant association against respondent Stroschein upon a marketing agreement for damages for breach of same; second action No. 4429 by respondent against appellant in *assumpsit* for alleged value of seed sold and delivered; third action No. 4402 by appellant against respondent for specific performance of marketing agreement and to restrain its violation. Respondent's general demurrer to appellant's complaints in actions 1 and 3, and to answer and counterclaim in action 2, sustained. Appellant elected to stand upon its several pleadings; judgment of dismissal in 1 and 3 and money judgment for value of seed in 2. *Judgment affirmed.*

Whitcomb, Cowen & Clark, for Appellant.

When a person makes a contract to pay money or to perform any other act upon the performance of a condition precedent, he may expressly or impliedly waive the performance of such prior condition at any time, and thereby render his promise absolute. Having once waived the condition, he cannot afterwards insist upon its performance, or claim a discharge by reason of its nonperformance. This principle applies with full force to subscriptions to the stock of a corporation. (2 Fletcher, Cyc. Corp., p. 1302, sec. 598; *Hughes Mfg. & Lbr. Co. v. Wilcox,* 13 Cal. App. 22, 108 Pac. 871; *Graves v. Saline County,* 161 U. S. 359, 16 Sup. Ct. 526, 40 L. ed. 732; 6 Cal. Jur., sec. 239; 2 Elliott on Contracts, sec. 1614; 3 Elliott on Contracts, sec. 2050.)

Publisher's Note.

See Agriculture, 2 C. J., sec. 26, p. 998, n. 31 New.

Contracts, 13 C. J., sec. 82, p. 279, n. 13; sec. 100, p. 292, n. 25 New; sec. 705, p. 635, n. 7.

A condition precedent to the taking effect of a contract is said to be waived by the conduct of the party for whose benefit such condition is inserted in treating such contract as in effect, in spite of the breach of such condition. (5 Page on Contracts, sec. 2659, p. 4678; *California Raisin Growers' Assn. v. Abbott*, 160 Cal. 601, 117 Pac. 767; *Church v. Wilkeson-Tripp Co.*, 58 Wash. 262, 137 Am. St. 1059, 108 Pac. 596; 6 R. C. L. 990, secs. 358, 359, 360.)

A waiver of a condition precedent may be implied from any act on the part of the subscriber with knowledge that the condition has not been performed which is inconsistent with an intention to insist upon performance of the condition, and it will always be implied, as a matter of law, and irrespective of the actual intention from any act, with such knowledge, which the subscriber could not lawfully do if he intended to insist upon the condition. (2 Fletcher, Cyc. Corp., 1303.)

John W. Jones and Guy Stevens, for Respondent.

Parties to one contract may specify therein how they may become bound by another contract embodied therein. If they do so contract, they become bound by the additional contract only when it is put into effect in the manner specified. (*Spinney v. Downing*, 108 Cal. 666, 41 Pac. 797; *Morrill v. Tehama Consol. M. & Min. Co.*, 10 Nev. 125; *Hopkins v. Paradise Heights Fruit Growers Assn.*, 58 Mont. 404, 193 Pac. 389; *Aftergut Co. v. Mulvihill*, 25 Cal. App. 784, 145 Pac. 728.)

"Mental determination to accept a bare proposal or mere offer, or even acts done in pursuance thereof, are not sufficient to bind the party who makes the offer." (*New v. Germania Fire Ins. Co.*, 171 Ind. 33, 131 Am. St. 245, 85 N. E. 703; 6 R. C. L., sec. 29, p. 606.)

BAUM, District Judge.—In the months of May, June and July, 1921, certain individuals residing in Bingham county, Idaho, including Stroschein, the respondent herein, in the three above-entitled causes, entered into a certain written agreement termed "Idaho Grimm Alfalfa Seed

Growers' Association Agreement," whereby the said individuals agreed among other things to organize a nonprofit association without capital stock, for the purpose of promoting, fostering and encouraging the business of marketing Grimm alfalfa seed co-operatively, for reducing speculation, for stabilizing Grimm alfalfa in harvesting and standardizing their product, and other pertinent purposes.

The agreement provided that if the signatures of growers of Grimm alfalfa seed covering at least 60 per cent of the Grimm alfalfa seed acreage planted in Bingham county, Idaho, were not procured, the agreement would be deemed invalid after notice, and if the required acreage was procured the agreement would become binding upon all the subscribers in all of its terms.

The agreement contained paragraphs numbered one to sixteen, inclusive, and following paragraph numbered fourteen, a marketing agreement containing sixteen main paragraphs and numerous subparagraphs.

The first action was instituted by appellant association against respondent to recover damages under the marketing agreement hereinabove referred to, and paragraph fifteen thereof, for the recovery of ten cents for each pound of Grimm alfalfa seed which it is alleged he produced during the year 1922, and failed to deliver to the association, together with attorney's fees.

The second action was commenced by respondent against appellant association in *assumpsit* to recover the sum of $2,037.14, the reasonable value of alfalfa seed sold and delivered by respondent to the appellant in the year 1921, and for which appellant refused to make payment. Appellant filed an amended answer and counterclaim to the complaint, the same being predicated upon the alleged breach by respondent of the marketing agreement hereinabove referred to, and counterclaimed for damages by reason of the failure of respondent to market his 1922 crop through appellant.

The third action was instituted by appellant association against respondent upon the marketing agreement hereinabove referred to, for the specific performance of the con-

tract and for an injunction restraining him from disposing of his seed crop for 1923, except through appellant.

Respondent interposed a general demurrer to the amended complaint in actions 1 and 3 and to the amended answer and counterclaim in action 2, on the ground that said complaints did not state facts sufficient to constitute a cause of action, and that said answer and counterclaim, respectively, did not state facts sufficient to constitute a defense or counterclaim. The demurrers were each sustained to appellant's several pleadings, and upon the refusal of appellant to plead further judgments of dismissal were entered in actions 1 and 3 and judgment was entered against appellant in action 2. The appeals are from such judgments.

In each of these actions the same proposed sale agreement found in the association agreement is before the court and presents the question as to whether appellant's amended complaints in actions 1 and 3 state a cause of action, and in action 2 whether the amended answer and counterclaim state facts sufficient to constitute a defense or a counterclaim to the action filed by respondent.

The issue presented by these appeals is one of pleading; therefore, a recital will be made of those allegations common to the respective pleadings to which general demurrers were sustained and pertaining to the agreement in controversy. These several pleadings in effect allege that appellant is a corporation organized and existing under the laws of the state of Idaho, and is a co-operative farm markets association; that during the months of May, June and July, 1921, certain individuals including respondent entered into a certain agreement, a copy of which is attached to all of the pleadings and is what is termed the "Idaho Grimm Alfalfa Seed Growers Association Agreement," and that more than 60 per cent of the Grimm alfalfa seed acreage was signed as in the agreement provided; that thereafter a corporation was organized as in said agreement provided; that it secured warehouses, installed machinery and so equipped itself as to serve its members; that subsequent to its organization, it performed all of the terms of said agreement by it to be performed except

as to the conditions relating to the marketing agreement mentioned in paragraph 14 of the general association agreement, and in reference thereto the several pleadings allege that it determined to proceed under the second subdivision thereof without requiring its members to sign new marketing agreements, and that while appellant failed to notify respondent or any of its other members thereof prior to the commencement of any of these actions, or its said answer and counterclaim, that respondent at all times herein has been fully aware of the things being done by appellant and of the things to be performed under the contract and of the failure to give this notice, and has waived the giving of such notice by taking part in the association meetings and other meetings of the stockholders of the said association thereafter; by delivering his seed for the year 1921, and having it cleaned and marketed by the association, and by demanding and receiving from the association supplies which it was furnishing to its members only, by failing to notify the association of any rescission of the contract and by accepting all of. the benefits of membership in said association for more than a year after its organization, and by treating said contract as in full force and effect and by various matters and things whereby it alleged respondent has derived financial benefit from membership in the association, and on account of which appellant association has suffered loss, and it alleges that respondent is estopped by reason of the aforesaid things and matters from claiming any relief from the duties and liabilities imposed upon him under the terms and conditions of said contract; that said contract is now and at all times herein mentioned has been in full force and is binding upon both parties to the action. The several pleadings contain such other allegations as are material to the particular case as to the raising of crops for the years 1921, 1922 and 1923.

The association agreement referred to was prepared for circulation and signature prior to the incorporation and organization of the association and undoubtedly is a dual

purpose contract consisting of a membership agreement and marketing agreement.

Respondent maintains that by becoming a member of appellant association he did not by that act in itself become bound by the marketing agreement as it was optional with appellant as to whether it would enter into a marketing agreement with its members and that it reserved in said marketing agreement the sole right to determine the manner and time of so doing, hence it will be necessary to consider the provisions of this agreement in detail.

Paragraph 1 of the membership agreement provides:

"1. We will become members of the Idaho Grimm Alfalfa Seed Growers Association, a non-profit co-operative marketing association, without capital stock, to be organized under the laws of the State of Idaho."

Following this we find some thirteen provisions all with reference to the incorporation of the appellant association, its organization, its Board of Directors, its officers and employees, entrance fee, nature of its work, which is to be confined to the problems of producing and marketing of Grimm alfalfa seed and its products, and for its members only, providing in its by-laws for the organization of a warehouse corporation, and the issuance and sale of common and preferred stock in the warehouse corporation and the making of contracts between appellant association and the warehouse corporation.

Paragraph fourteen of the agreement is as follows:

"14. (a) The subscriber agrees: (1) to execute, when requested by the association, a marketing agreement in terms substantially the same as those set forth in the agreement herewith embodied; or (2), at the option of the board of directors, to be bound by the terms of the following marketing agreement.

"For such purpose signature to this association contract shall be deemed to all effects the same as signature to said marketing agreement and an acceptance of each and every provision hereof and herein as of the date of the exercise of such option by the board of directors. Notices thereof

shall be mailed to each subscriber at his address as noted below.

"The subscriber here applies for membership in the associations when organized and expressly agrees that his signature to the association contract and to the marketing agreement herewith embodied and to this application for membership, shall be irrevocable except as provided in paragraph ten, and that he so agrees in order to induce other growers to sign this agreement for his benefit as well as their own general benefit and the public welfare.

"Acceptance of this application for membership and of the marketing agreement, shall be deemed conclusive upon the mailing of the notice by the association and such mailing and notice shall be conclusively established by the affidavit of the secretary of the association."

Then follows the marketing agreement and the words "marketing Agreement" appear in the middle of the page and after the preamble. This marketing agreement contains sixteen paragraphs and following and in the middle of the page are the words "end of Marketing Agreement," then follows paragraphs 15 and 16 of the association agreement.

By the proposed marketing agreement the grower expressly contracts to sell and deliver all of his Grimm alfalfa seed produced and acquired by him during the years 1921 to 1925 inclusive, to the association, appellants herein, and all provisions of the marketing agreement expressly refer to the sale, delivery, pooling and marketing of the seed and the accounting and paying therefor and this contract provides for specific performance, for a certain sum as liquidated damages for breach and for the payment of attorney's fees.

Upon examination of the agreement, amended complaints, amended answer and counterclaim herein, it will be observed that the pleadings are based entirely upon the provisions of the marketing agreement.

[1] Parties to one contract may specify therein how they may become bound by another contract embodied therein. The manner specified must be followed, if the parties are

to become bound by the additional contract. (*Spinney v. Downing*, 108 Cal. 666, 41 Pac. 797; *Morrill v. Tehama M. & M. Co.*, 10 Nev. 125.) An assent thereto in any other or different mode will not be presumed. (*Morrill v. Tehama M. & M. Co., supra.*)

In the case at bar, the acceptance of the marketing agreement was solely dependent upon the board of directors exercising the option by giving the association members written notice that it elected to have them bound by the marketing agreement.

[2] A contract may also be conditional on notice of some matter being given, and notice must be given accordingly in order to render the promise absolute, and must be alleged in an action brought on it. (13 C. J. 635, sec. 705; *Drew v. Goodhue,* 74 Vt. 436, 52 Atl. 971.)

In a contract of option the party giving the option protects himself only by a condition. There is no obligation on the other side to perform. The question here, therefore, is not one of condition implied in law but of an express condition which must be strictly performed in order to hold the promisor liable. (2 Williston on Contracts, p. 1634, sec. 853.)

Where a party stipulates to do a certain thing in a certain specific event which may become known to him, or with which he can make himself acquainted, he is not entitled to any notice, unless he stipulates for it; but when it is to do a thing that lies within the peculiar knowledge of the opposite party, then notice ought to be given him. Where an option is given in a contract to one party or the other, he must give notice of the exercise of the option. (Id., vol. 2, p. 1714, sec. 894.)

If a contract provides for notice either by its express terms or by necessary implication, and either as a condition precedent to the duty of the party to whom notice is to be given to perform, or as a condition subsequent to terminating rights under the contract, full effect is given to such provision, and a substantial compliance therewith is necessary. (5 Page on Contracts, 4583, sec. 2609.)

When appellant intends to charge that respondent became bound under the terms of the marketing agreement, its pleadings do not disclose. Subdivision two of paragraph 14 provides that all members of appellant association shall be bound under the terms of the marketing agreement, after the organization of the corporation, and at the option of its board of directors after it is formed and at the date the board exercise such option by giving the member written notice thereof. The allegation of the complaint: "That the plaintiff determined to proceed under the second subdivision," is not an allegation that the appellant did in fact exercise its option; or, even if it be conceded that this allegation would from the date of the filing of its complaints, answer and counterclaim estop respondent from denying his liability under the agreement in order to supply what would otherwise be lack of mutuality, this would not date back to the time of the alleged breach or breaches of the agreement by respondent.

[3] It was optional with appellant whether a marketing agreement would be entered into with its various members, and the manner in which it was to be made effective, as well as the date that the same was to become effective. Respondent had no right to insist that appellant exercise the option and make a marketing agreement with him. Two ways were provided as to how this option would be exercised and appellant fails to advise in the pleadings that it did exercise its option as in the agreement provided. Appellant maintains that respondent waived the provisions inserted in the agreement for its benefit. Respondent having no right to insist that appellant make a marketing agreement, had no right that he could waive. He proffered to make a marketing agreement but this offer was never accepted in the manner specified or in any manner.

In 6 R. C. L. 606, sec. 29, the following rule is stated:

"In the case of an offer which requires a reciprocal promise it is clear that mental determination to accept, or even an act done in pursuance thereof, is insufficient to bind the party who makes the offer. To constitute acceptance of such an offer there must be an expression of the

intention, by word, sign or writing communicated or delivered to the person making the offer, or his agent. A mere private act of the person to whom the offer is made does not constitute acceptance.''

In *New v. Germania Fire Ins. Co.*, 171 Ind. 33, 131 Am. St. 245, 85 N. E. 703, it is said:

''In the case of a mere offer it is entirely clear that mental determination to accept, or even acts done in pursuance thereof, is not sufficient to bind the party who makes the offer.''

Mere determination unless followed by action taken in pursuance of the provisions of the contract would not be sufficient. The determination must have been brought to the knowledge of respondent.

In *Hawkins v. Smith*, 35 Ida. 349, 205 Pac. 188, it was held:

''Waiver is the voluntary abandonment or relinquishment by a party of some right or advantage, and does not necessarily depend upon any new or additional consideration. But in such case it must appear that the adversary party has acted in reliance upon such waiver and altered his position, etc.''

It does not appear from the pleadings that appellant's position was altered in any way by respondent's conduct.

If the option to bind the members to the marketing agreement embodied in the association agreement was exercised by the board of directors, respondent was entitled to notice, and the directors were required to give him notice. The board not having given any notice thereby failed to exercise its option to purchase, and respondent, not being entitled to notice unless the board exercised its option, had no right that he could waive. In 27 R. C. L. 908, sec. 5, it is said:

''To constitute a waiver within the definitions already given, it is essential that there be an existing right, benefit, or advantage, a knowledge, actual or constructive, of its existence, and an intention to relinquish it.''

Respondent, as a member of appellant association, had a right to attend its meetings, and to accept such benefits

as it conferred, namely: Those enumerated in paragraphs 1 to 14 of the association agreement. The benefits that are alleged he accepted all come within the purview of these paragraphs, and if the benefits that respondent is alleged to have accepted, were occasioned by appellant adopting the marketing agreement, and that when he, respondent, accepted the same, he was well aware of such fact, the pleadings contain no allegation to that effect, or any allegation from which the same might be inferred.

The respective pleadings are defective in that nowhere therein is it alleged that respondent signed the marketing agreement when requested by appellant, or that the directors of the corporation exercised their option to bind its members, including respondent, by the terms of the marketing agreement embodied in the contract so signed, or sufficient facts to show a waiver.

In view of the conclusion reached herein, it is not necessary to pass upon the motion to dismiss the appeal in action number three.

The ruling of the trial court in each of the said causes is hereby affirmed. Respondents to recover costs.

William A. Lee, C. J., and Taylor, J., concur.

Givens, J., being disqualified, took no part.

Petition for rehearing denied.

WM. E. LEE and BUDGE, JJ., Dissenting.—The specific purpose of the first action was to recover a sum, as liquidated damages, on account of the alleged breach by respondent of certain terms of an agreement requiring him to deliver his seed crop of 1922 to appellant for marketing. The ultimate object for which the association was organized was the marketing of the alfalfa seed grown by its members; and the association agreement vested the association, acting by and through its board of directors, with power to undertake the marketing of such alfalfa seed. The terms of the marketing agreement were specifically set

forth in the association agreement. Each of the members or subscribers to the association agreement promised and agreed to sign a marketing agreement or to be bound by the marketing agreement embodied in the association agreement. If the board of directors decided to follow the last alternative, it was provided that notice of its decision would be given each member. The association alleged that it "determined to proceed" and hold its members bound by the marketing agreement contained in the association agreement, which was a sufficient allegation of the exercise of its option.

To excuse the failure to give respondent the required notice the association alleged that respondent had at all times been fully aware of its failure to give notice and fully aware of all of its actions in carrying out the terms of the agreement by taking part in the organization meeting and other meetings of the association, by delivering his seed in 1921 and having it cleaned and marketed by the association, by demanding and receiving supplies from the association, by accepting all the benefits of membership for more than a year after the organization of the association and by treating the agreement in full force and effect.

It was, of course, necessary that respondent have notice that the association was operating under the marketing agreement contained in the association agreement so that he could abide by its terms, and accept its benefits. The notice was for his benefit. Nothing was necessary to be done by respondent to put the marketing agreement in force. The minds of the parties had already met as to the terms of the marketing agreement, and the mailing of notice that the board of directors had exercised the option given it to proceed under the marketing agreement, which they had embodied in their association agreement, was all that was required. If, therefore, as is alleged, respondent had actual notice, was aware that the association was operating under the marketing agreement with which he was familiar, and accepted the benefits alleged and actually delivered his 1921 crop of alfalfa seed to the association he waived the notice in writing.

5 Page on Contracts, sec. 2659, sets forth the rule, citing authorities in its support, that:

"A condition precedent to the taking effect of a contract is said to be waived by the conduct of the party for whose benefit such condition is inserted in treating such contract as in effect, in spite of the breach of such condition."

See, also, *California Raisin Growers' Assn. v. Abbott et al.,* 160 Cal. 601, 117 Pac. 767.

The demurrers in the first and third causes of action should have been overruled. In the second action by respondent against the association to recover the value of alfalfa seed sold and delivered in 1921, the demurrer of respondent to the answer and counterclaim of the association should have been overruled. The inconsistency of the position of respondent in these two actions is apparent when they are considered together. In the first, the association is denied relief against respondent under the marketing agreement because it did not give him notice in writing that it had determined to proceed with the business of co-operatively marketing the alfalfa seed of its members. In the second, respondent is permitted to recover the reasonable value of seed, which, by his demurrer to the answer and counterclaim, he admits was delivered to the association under the agreement pleaded by the association.