GERARD, APPELLANT, v. SANNER ET AL., RESPONDENTS.

(No. 7,914.)

(Submitted November 17, 1939.   Decided February 9, 1940.)

[103 Pac. (2d) 314.]

*Mr. R. Lewis Brown, Mr. Earle N. Genzberger* and *Messrs. Emigh & Murray,* for Appellant, submitted an original and a

reply brief; *Mr. Genzberger* and *Mr. J. F. Emigh* argued the cause orally.

*Mr. Charles R. Leonard* and *Mr. J. A. Poore,* for Respondents, submitted a brief; *Mr. Poore* argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This is an appeal from the judgment of the district court of Silver Bow county. Trial of the cause was had before a jury. At the conclusion of plaintiff's case a motion for nonsuit was made and denied. On motion of the defendants below, at the conclusion of all of the testimony, a directed verdict for the defendants was ordered. The appeal is from the judgment based on that directed verdict. A motion for new trial was made and denied.

The plaintiff, Harry Gerard, was during the time of the transaction herein attorney in fact for W. A. Clark, Jr. On behalf of Clark, Gerard entered into certain negotiations with Walter Hansen, as a result of which Clark purchased a half interest in the Hansen Packing Company by the acquisition of 300,000 shares of the 600,000 outstanding shares of the company. The defendant Sanner was during the times mentioned herein the attorney in Butte for Clark, and assisted Gerard and Clark in the transactions out of which this suit arose. The arrangements for the purchase on the part of Clark of the Hansen Company stock were made in the Clark residence at Los Angeles, California, with Gerard, Sanner and Hansen present. In the agreement made at that time—December 9, 1928—Clark personally offered to advance additional funds, not exceeding $300,000, to pay outstanding indebtedness of the company, and in his proposition he also stipulated that the company be reorganized.

On February 8, 1929, a directors' meeting of the Packing Company was held, and at this meeting the directors approved the agreement made by Hansen and Clark above referred to. The meeting authorized the cancellation of the outstanding certificates and the reissuance of certificates in the amount of 600,000 shares of common stock; 270,000 shares of common stock were

issued in the name of Clark, 270,000 in the name of Hansen and wife, 30,000 in the name of Gerard, and 30,000 in the name of Sanner. At that meeting it was agreed between Clark and Hansen that from their stock interests 60,000 shares were to be issued—30,000 shares to Harry Gerard and 30,000 to Sydney Sanner. The minutes of the corporation at the time the stock was reclassified and reissued pursuant to the agreement made recite: "The directions of the Board respecting the cancellation, issuance and reissuance of certificates of stock have been executed, except that by direction of Walter G. Hansen and W. A. Clark, Jr., the certificates for 30,000 shares of new issue to each of them were made respectively to Harry Gerard and Sydney Sanner."

The stock certificate issued to the plaintiff was No. 42. On the stub of the stock book, marked certificate No. 42, appears the following notation: "Certificate No. 42 for 30,000 shares issued to Harry Gerard source: original issue. Stock dividend to W. G. Hansen." From defendant Sanner's testimony it appears that by endorsement at the time of issuance he transferred his stock to W. A. Clark. From this it appears that the Gerard stock came from the Hansen shares and the Sanner stock from the Clark shares.

Clark had prior to this meeting advanced $300,000 to liquidate the indebtedness of the company, and at the meeting the Hansens, Sanner and Gerard pledged their common stock as security for the amount advanced. This stock was delivered to an agent of Clark, one Mangam. On the same day and at the same meeting Clark, through Gerard, offered to accept 300,000 shares of new preferred stock to be issued in satisfaction of the obligation of $300,000 advanced by Clark to the company and secured by the pledge. In the pledge agreement made on that same day, it was provided that "this pledge shall continue until the whole of such repayment be made even though in liquidation of such obligation the Company should issue and deliver to said W. A. Clark, Jr., 300,000 shares of Class A stock with guaranteed dividends of six per cent. per annum, and even though he

should in consideration of such Class A stock deliver to the Company a discharge of such obligation,'' etc.

Subsequently, 300,000 shares of Class A preferred stock were issued to Clark and a receipt which appears on the stub of the certificate so issued recites discharge of the obligation, but it also provides that the acceptance of the Class A stock shall not release the collateral security including the shares issued to Gerard, Sanner and the Hansens.

On the same day—February 8, 1929—Clark and Hansen entered into an agreement wherein they recited that each was to control in equal measure the affairs of the company, and that neither, by any method, was to secure more shares than the other, and that in the event of conflict Sanner's shares were to be voted on one side, and Gerard's on the other, and Gerard and Sanner in writing assented to that arrangement. This contract was made for Clark by Gerard, but Gerard testified without contradiction that Clark knew of the agreement and approved of it.

The shares of stock in question here are the 30,000 issued to Gerard from Hansen's stock. The certificate for these shares was in the possession of the Clark interests during all the time in question, and were in Clark's possession at the time of his death on October 3, 1934. The defendants herein, including Sanner, were executors of Clark's estate, and as such executors they sold the 30,000 shares of Gerard stock. At the time Sanner received the 30,000 shares of stock issued to him he endorsed the certificate in blank, and his testimony is that he held the stock for Clark and did not at any time consider it to be his property. Gerard never endorsed the certificate representing the 30,000 shares issued to him. After all of the transactions hereinbefore set out, Gerard severed his connection with Clark.

On May 17, 1929, Sanner sent Gerard the following telegram :

''Please wire me your waiver of any interest or ownership of thirty thousand shares common stock Hansen Packing Company heretofore held by you in trust for Junior and please confirm your answering wire by letter.

''SYDNEY SANNER.''

In reply Gerard wired Sanner:

"Referring to your telegram of this date I herewith waive my fifty per cent interest in sixty thousand shares of Hansen Packing Company stock given to you and myself by W. A. Clark Jr. and Walter Hansen provided you also waive your interest to fifty per cent thereof this will confirm similar statement already made to Buck Mangam and Walter Hansen am writing them and Junior.

"HARRY GERARD."

On the same day Gerard sent wires to Mangam, Clark and Hansen which substantially were the same, leaving out the address and heading. The body of these wires being: "Referring to telegram received today from Judge Sanner this will confirm my statement heretofore made to you and Buck Mangam that I will waive my fifty per cent interest in sixty thousand shares of Hansen Packing Company stock given to Judge Sanner and myself by W. A. Clark, Jr. and yourself, providing Judge Sanner also waives his interest to fifty per cent thereof." The wires to Mangam and Clark were essentially the same.

In reply to Gerard's wire to him, Mr. Sanner sent the following wire: "Re your telegram I regarded the Hansen shares issued to me as a trust from the beginning and have waived all interest therein."

The complaint alleges conversion of 30,000 shares of stock in question by defendants individually and as executors of the Clark estate, and it seeks damages in the sum of $120,000, the alleged value of the stock at the time of conversion, with interest from the date of conversion, and prays that the judgment against the executors be adjudged a debt of the estate of W. A. Clark, Jr., deceased, and that it be paid in the course of administration. The answers of the appearing defendants were in substance the same, in that they contained a general denial of conversion and the alleged resulting damages, and pleaded affirmative defenses that the action was barred by certain statutory provisions. The plaintiff's reply, which contained a general denial of the affirmative defenses, also alleged as a defense to each that the defendants severally resided outside the state of

Montana, save for a few short visits to Montana during the period between the date of the alleged conversion and the commencement of the action in the district court.

In passing on the motion for a directed verdict, the court must ▮ concede as true all the evidence supporting the view of the plaintiff, giving him the benefit of all legitimate inferences. (*Mitchell* v. *Northern Pac. Ry. Co.*, 63 Mont. 500, 208 Pac. 903.) Plaintiff's evidence must be taken as true and must be regarded in the light most favorable to him. (*Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 291 Pac. 1042; *Childers* v. *Deschamps*, 87 Mont. 505, 290 Pac. 261.)

We believe the district court erred in directing a verdict for defendants, under the rule stated in the preceding paragraph. A complete and thorough examination of the record and the pleadings convinces us further that the issue of title should have been withdrawn from the jury. The testimony shows conclusively and without contradiction that the 30,000 shares of stock in question were issued to Gerard from the Hansen stock, and not from the Clark stock.

It is defendants' contention that regardless of where the stock ▮ came from, Gerard held it as trustee for Clark, since he was Clark's agent, and to hold otherwise would be to allow him to perpetrate a fraud upon his principal. No citation of authority is necessary to refute this argument, since, as has been indicated above, Clark knew of the issuance of the Hansen stock to Gerard and in fact suggested it at the meeting held in Los Angeles. ·

The lower court ruled that the stock was not held as a pledge when it sustained an objection to an offer of proof made by defendants that the obligation had never been paid. The court was correct in this ruling because certainly the issuance of the 300,000 shares of Class A stock discharged the obligation upon which the pledge was based; and even though an agreement was made by Gerard and the others that the pledge was to remain though the obligation was discharged, the payment of the obligation terminated the pledge. The transaction was in effect an accord and satisfaction. (Secs. 7456, 7458, Rev. Codes.) And

this court has held that where the obligation for which a pledge is given no longer exists, the pledge arrangement is no longer effective. (*National Park Bank of New York* v. *American Brewing Co.*, 79 Mont. 542, 257 Pac. 436.)

Defendants take two positions in supporting their views in this case. The first position is that Gerard never was the owner of the stock in question. The second is that Gerard was the owner of the stock in question and pledged it to Clark. These two positions cannot be reconciled.

In support of the first view taken by the defendants, in addition to the contention that by reason of Gerard's relationship with Clark, he was the trustee of the stock in question in behalf of Clark, defendants lay great stress on the testimony of the witness McInerney. In this testimony the witness recited that at a meeting in Los Angeles in the presence of Clark "and possibly Walter Hansen," in reply to a question from Mr. Clark, Mr. Gerard had said that he got nothing out of the Packing Company deal, and further that he considered himself "merely the holder of that stock and not the owner." This is the only testimony which purports to overcome the legal effect of the fact that the stock in question was issued to Harry Gerard and stood in his name on the books of the corporation at the time the stock was sold to Sullivan, trustee. This testimony attempts to raise the question as to the equitable ownership of the stock in someone other than Gerard, and as to the equitable ownership of the stock it does not purport to put it in Clark. It is not sufficient to raise an issue of fact as to whether Gerard had sufficient interest in the stock in question to maintain the suit as against these defendants.

We cannot presume that Clark was the owner—equitable or otherwise—of the Gerard shares of stock, for to do that would be to presume fraud on the part of Clark, since by his agreement with Hansen he agreed not to acquire a greater number of shares than Hansen and thus gain control of the company. There is no intimation in any of the testimony that Clark actually was the owner of the stock and that Gerard was the trustee in his behalf. Since Gerard was the holder of the legal title to the

stock, and since the Clark interests were not the equitable owners of the stock, and since the stock was not held or sold as a pledge by the Clark interests, but one question remains for discussion, and that is as to the effect of the various telegrams and letters which defendants contend operate to transfer the 30,000 shares of stock from Gerard to Clark by what they call a "waiver."

"Waiver" has been well defined, and this court in *Northwestern F. & M. Ins. Co.* v. *Pollard,* 74 Mont. 142, 238 Pac. 594, 596, sets out its essential elements. Waiver requires two parties—one party waiving the right, and another receiving the benefit of such waiver. "Waiver must be manifested in some unequivocal manner, and to operate as such it must in all cases be intentional. There can be no waiver unless so intended by one party and so understood by the other." (*Northwestern F. & M. Ins. Co.* v. *Pollard,* supra; see, also, *Mundt* v. *Mallon,* 106 Mont. 242, 76 Pac. (2d) 326.)

The various telegrams and letters do not indicate the second party to the transaction, and the inference may as well be drawn that the waiver was for the benefit of Hansen as for Clark. In fact, on the basis of the testimony, it would not be logical to assume that the second party was Clark, the only logical inference being that the second party was Hansen.

It is well settled that in the absence of acts constituting estoppel there must be consideration for waiver. "A waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance." (27 R. C. L. 910; see, also, 67 C. J. 296; 40 Cyc. 263.) For leading cases supporting this rule, see *Hughes* v. *Lansing,* 34 Or. 118, 55 Pac. 95, 75 Am. St. Rep. 574; *Idaho Grimm Alfalfa Seed Growers' Assn.* v. *Stroshein,* 42 Idaho, 12, 242 Pac. 444, 47 A. L. R. 916; *Schindel* v. *Danzer,* 161 Md. 384, 157 Atl. 283; *Masser* v. *London Operating Co.,* 106 Fla. 474, 145 So. 72, 79; *Marfield* v. *Cincinnati, D. & T. Traction Co.,* 111 Ohio St. 139, 144 N. E. 689, 40 A. L. R. 357.)

Here we can find no consideration for the so-called waiver. The testimony of Sanner is that there was no monetary consideration. Monetary consideration is not necessary; however, there must be some benefit conferred upon Gerard or some additional burden placed upon Sanner before we can say that there has been consideration for the contract. The transfer of the stock does not benefit Gerard. However, benefit is conferred upon Sanner as a representative of the Clark estate by the transfer. Neither can we find any additional burden upon Sanner. The testimony is that he had previously transferred the stock by endorsement to Clark, and his own testimony is that he at no time claimed any interest—either equitable or legal—in the stock. Therefore, he did nothing in addition to what he had already done and the element of a burden upon the one party of the contract is lacking.

Defendants rely upon the statutory rule that a written instrument is presumptive evidence of consideration. (Sec. 7512, Rev. Codes.) Also that the burden of proving that there was no consideration was upon Gerard. (Sec. 7513, Id.) This presumption was sufficiently rebutted not only by Gerard but by the witness Sanner himself when he testified that he paid nothing to Gerard for the waiver, nor did he offer to pay him anything.

It is urged that the element of estoppel is sufficient to support the waiver. The doctrine of estoppel has been crystallized into statutory form in Montana—subdivision 3, section 10605, Revised Codes. This section has been construed to require all of the necessary elements of estoppel at common law. (*Waddell* v. *School District*, 74 Mont. 91, 238 Pac. 884.) What constitutes estoppel is difficult to define by set rule, although there are numerous definitions of the doctrine. ''Equitable estoppel rests largely on the facts and circumstances of the particular case.'' (10 R. C. L. 689.) This court has said, however, that all the usual elements must be found to exist; otherwise estoppel does not arise. (*Lindblom* v. *Employers' Liability Assur. Co.*, 88 Mont. 488, 295 Pac. 1007.)

The basis of defendants' theory that estoppel exists here is founded on the idea that Gerard by his action induced defend-

ants to believe he held the stock as trustee for Clark. Sanner's testimony is, "No portion of that stock came from Mr. Clark." Mr. Sanner knew of the transaction and all its details from the beginning, and one of the indispensable elements of estoppel—ignorance of the facts in question by the party who invokes the estoppel—is lacking. Gerard, in answer to Sanner's telegram, definitely avoided saying that he would turn over the stock to Clark as requested by Sanner. In addition to that, even though there had been some of the element of ignorance present, the defendants have failed to show in any way a change in their position in reliance on the alleged waiver, sufficient to satisfy the requirements of equitable estoppel.

But it is urged by the defendants that even though there may have been no waiver in behalf of Clark, there was in behalf of Hansen, and that, therefore, Gerard could not maintain the action. Whether there was a waiver in behalf of Hansen is not here in issue; but granting that there was, Gerard might still maintain the action since he was the legal owner of the stock and entitled to its possession. (*Bethel* v. *Gieble,* 101 Mont. 410, 55 Pac. (2d) 1287, 104 A. L. R. 1150; *Swords* v. *Occident Elevator Co.,* 72 Mont. 189, 232 Pac. 189.)

It appears, then, that there could be no object in sending this matter back for a new trial, except as to the amount of damages to be awarded Gerard. Defendants' own testimony shows that Gerard has at least the legal title to the stock, and that, as a matter of law, the stock was not held in pledge or sold as a pledge; and further, the so-called waiver is of no effect since it is not founded either on good consideration or on equitable estoppel. Therefore, the judgment is reversed and the cause remanded with directions to the district court to proceed in accordance with the views expressed therein, and to submit to a jury the question of damages only. It is so ordered.

Mr. Chief Justice Johnson and Associate Justices Angstman and Arnold concur.

MR. JUSTICE MORRIS:

I dissent. Gerard's offer to surrender his stock if Sanner would surrender his is an acknowledgment that he did not own the stock. Not being the owner he suffered no injury by its sale and had no right of action. In my judgment the stock is the property of Hansen, unless the Clark estate can show better title than is shown by the record.

Rehearing denied March 20, 1940.