Charles HULME, Appellant,

v.

SWEETMAN CONSTRUCTION COM-
PANY, Appellee.

No. 5192.

United States Court of Appeals
Tenth Circuit.

Feb. 1, 1956.

Richard Jones, Wichita, Kan. (R. C. Russell, Isabel Obee, Don C. Foss, Great Bend, Kan., A. W. Hershberger, J. B. Patterson and Wm. P. Thompson, Wichita, Kan., on the brief), for appellant.

Robert Martin, Wichita, Kan. (George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., and W. F. Schell, Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

PHILLIPS, Chief Judge.

From the spring of 1951 until the fall of 1952, Hulme was engaged in carrying out a railroad construction contract near Chamberlain, South Dakota, which he had entered into with the Corps of Engineers, United States Army.[1] During the same period, Sweetman Construction Company [2] was engaged in carrying out a similar contract. In order to fulfil his contract, Hulme required a quantity of crushed rock materials, consisting of surface gravel, sub-ballast and ballast. On October 31, 1951, Hulme and Sweetman entered into a written contract, which provided that Sweetman would stockpile for Hulme, at a designated location, approximately 1,570 cubic yards of surface gravel, approximately 2,280 cubic yards of sub-ballast, and approximately 5,000 cubic yards of ballast, all in accordance with specifications for such

1. Hereinafter called the Corps of Engineers.

2. Hereinafter called Sweetman.

materials set forth in the contract between Hulme and the Corps of Engineers. Hulme agreed to pay Sweetman for these materials the sum of $1.75 per cubic yard, 30 days after creation of the stockpile or withdrawal of materials. Sweetman further agreed that in the event additional materials should be necessary, it would stockpile such additional materials.

Sweetman completed the stockpiling of the amounts of materials specifically stipulated in the contract about January 1, 1952. It also stockpiled materials for its own use.

From the middle of November, 1951, until January 5, 1952, Hulme withdrew from the stockpile approximately 5,895.6 cubic yards of materials.

On January 18, 1952, Sweetman forwarded to Hulme a bill dated January 10, 1952, for 5,943.7 cubic yards of materials withdrawn from the stockpile and for other items not in controversy, in the aggregate amount of $12,927.43. On January 28, 1952, Hulme wrote to Sweetman, stating certain objections to the bill, and enclosed a recomputation showing a balance of $11,033.33. Sweetman refused to agree to Hulme's recomputation and so notified him on February 4, 1952.

The dispute arose primarily because of a disagreement as to the method to be used in computing the amount of materials withdrawn by Hulme. The materials withdrawn were not measured by volume, but were weighed on the truck as they were withdrawn. Sweetman contended such amount should be the volume of the materials arrived at from their weight. Hulme contended it should be the volume of the materials as estimated by the Corps of Engineers after they were in place on the project. Hulme ultimately accepted Sweetman's method of computation.

The contract between Hulme and the Corps of Engineers provided that the work should be completed by April 25, 1952. In the spring of 1952, Sweetman moved its crusher and other equipment to another project approximately 125 miles distant from the stockpile.

On June 1, 1952, Hulme resumed work under his contract and again withdrew materials from the stockpile until July 9, 1952. On the latter date Sweetman notified Hulme that he could not withdraw any further materials from the stockpile. On July 9, 1952, Hulme agreed with Sweetman to pay $10,000 on his account and to work out an amicable adjustment with respect to the balance due on the January 10, 1952, bill and Sweetman agreed to let Hulme resume withdrawals from the stockpile. Hulme paid the $10,000, but did not reach any agreement with Sweetman with respect to the balance due.

From June 1, 1952, to August 1, 1952, Hulme withdrew approximately 3,014.8 yards of materials from the stockpile. For such materials Sweetman submitted a bill to Hulme on August 1, 1952, and Hulme paid the bill on August 23, 1952. From August 25, 1952, to August 29, 1952, Hulme withdrew additional materials from the stockpile in the amount of approximately 321 cubic yards, for which there remains due and unpaid $641.75.

On September 8, 1952, Sweetman submitted a revision of its January 10, 1952, bill, showing a balance due of $2,843.25. Hulme agrees that the revised bill is correct. It was $84.18 less than the original bill. Hulme also agrees that he is indebted to Sweetman in the total sum of $3,485 for materials withdrawn from the stockpile.

By September 3, 1952, Hulme had withdrawn all of the original materials stockpiled for him in the amounts specifically set out in his contract with Sweetman and a small amount of materials Sweetman had stockpiled for its own use. Thereupon, Sweetman refused to permit Hulme to withdraw further materials from the stockpile.

On several occasions between September 3 and September 15, 1952, Hulme made demand on Sweetman to stockpile immediately additional materials. On

several occasions between September 3 and September 12, 1952, Sweetman notified Hulme that the additional materials would be furnished by one Rounds, who would move in crushing equipment. On September 14, 1952, Hulme received 300 cubic yards of materials from Rounds. They were rejected by the Corps of Engineers.

On September 24, 1952, Sweetman notified Hulme that it would return its equipment and begin furnishing the additional materials on or about October 1, 1952.

On September 15, 1952, Hulme made arrangements to secure the additional materials from one Lyle Hedrick. Hedrick commenced furnishing the additional materials to Hulme shortly after September 29, 1952. Hulme completed his contract on October 5, 1952.

Sweetman brought this action to recover the unpaid balance on the contract with Hulme. Hulme interposed a counterclaim for the amounts paid Hedrick for the additional materials in excess of the contract price with Sweetman and for other alleged items of damage asserted to have resulted from the failure of Sweetman to furnish the additional materials. The trial court found the demand of Hulme that Sweetman immediately stockpile the additional materials was unreasonable; that Sweetman offered to stockpile the materials within a reasonable time after notice; that Sweetman had not breached its contract and was entitled to recover the balance due for the materials furnished of $3,-485, less an unrelated item of credit due to Hulme of $603.54, and awarded judgment in favor of Sweetman against Hulme for $2,881.46, with interest and costs. Hulme has appealed.

■ The requirement of Sweetman to furnish additional materials being dependent upon a future contingent event, of which it had no knowledge, it was incumbent upon Hulme to give it reasonable notice that he would require additional materials[3] and to afford Sweetman a reasonable time, under the circumstances, to furnish additional materials.[4]

■ Hulme must have known for some time prior to September 3, 1952, that he would need additional materials. He waited until he had removed all of the materials that had been stockpiled for him and some additional materials that Sweetman had stockpiled for itself before notifying Sweetman that additional materials would be needed to complete Hulme's contract with the Corps of Engineers. Sweetman was not required to keep rock crushing and other equipment

3. Investors' Utility Corporation v. Challacombe, Tex.Civ.App., 39 S.W.2d 175; In re Millbourne Mills Co., D.C.E.D.Pa., 165 F. 109; Idaho Grimm Alfalfa Seed Growers' Ass'n v. Stroschein, 42 Idaho 12, 242 P. 444, 47 A.L.R. 916; Williston on Contracts, Rev.Ed., Vol. 3, § 877B, pp. 2498–2500; Corbin on Contracts, Vol. 3, § 724, pp. 822–824.

4. The parties have agreed that the law of South Dakota is controlling in this case. The Code of South Dakota, 1939, § 10.-0107, states:

"Time of performance: reasonable allowed; express provision to make time essence of. If no time is specified for the performance of an act, a reasonable time is allowed. If the act is capable of being done instantly, such as payment of money, it must be performed immediately when due and ascertained.

"Time is never considered as of the essence of the contract, unless by its terms expressly so provided."

The rule is universal that when a contract fixes no definite time for performance, the law ordinarily implies that performance shall be within a reasonable time. Fox v. Johnson & Wimsatt, 75 U.S.App.D.C. 211, 127 F.2d 729; Excelsior Mining Co. v. Willson, 206 Ark. 1029, 178 S.W.2d 252; Morrow v. Coast Land Co., 29 Cal.App.2d 92, 84 P.2d 301; Erskine v. Upham, 56 Cal.App.2d 235, 132 P.2d 219; Kersch v. Tabor, 67 Cal.App.2d 499, 154 P.2d 934; Smith v. Mavar, 198 Miss. 170, 21 So.2d 810; Wemple v. B. F. Goodrich Co., 126 N.J.L. 465, 19 A.2d 692; City of New York v. New York Cent. R. Co., 275 N.Y. 287, 9 N.E.2d 931; Irwin v. Pacific Fruit & Produce Co., 188 Wash. 572, 63 P.2d 382; Parsons v. Town of New Canada, 209 Minn. 129, 295 N.W. 907; Lavretta v. First Nat. Bank of Mobile, 235 Ala. 104, 178 So. 3.

standing by to meet a possible requirement of Hulme for additional materials.

When Hulme demanded that Sweetman furnish additional materials immediately, Sweetman undertook to provide such materials through one Rounds. When Rounds' materials proved to be unsatisfactory, Sweetman offered, on September 24, 1952, to commence furnishing the additional materials on October 1, 1952.

We think a furnishing of the additional materials by Sweetman, commencing October 1, 1952, would have constituted a reasonable compliance with Sweetman's obligation under the contract. The failure of Hulme to accept that offer and the action of Hulme in securing the materials from another source excused Sweetman from further performance under the contract.

We conclude that Sweetman did not breach the contract with Hulme and that the judgment should be affirmed.