**REA EXPRESS, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COM-
PANY, Appellee.**

No. 265.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Nov. 5, 1969.

Rehearing Denied Dec. 10, 1969.

Harry Tindall, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, for appellant.

Thomas S. Terrell, Sewell, Junell & Riggs, Houston, for appellee.

BARRON, Justice.

This suit is based upon a contract wherein Missouri Pacific Railroad Company sued REA Express for indemnity. Prior to trial on the merits of the case, REA Express' motion to compel arbitration was overruled by the trial court. At the trial of the cause with aid of a jury, the trial court overruled the motion for directed verdict filed by the defendant REA Express and sustained the motion for directed verdict filed by the plaintiff Missouri Pacific Railroad Company. Judgment was entered in favor of Missouri Pacific Railroad Company for $6,943.-00, representing full indemnity against the defendant pursuant to the contract of the parties, to-wit: the Standard Express Operations Agreement. From that judgment below this appeal has been perfected by defendant REA Express as appellant.

Appellant contends that the trial court erred in granting judgment for appellee (1) because the undisputed evidence shows that the accident in question was due to the sole negligence of appellee, (2) because the evidence failed to show that appellee complied with the contract of the parties, and failed to show that REA breached such agreement, (3) because REA was entitled to jury findings on the question of proper notice to Missouri Pacific, a claimed fact issue having been presented to the jury on

such question, and (4) because the trial court erred in overruling appellant's plea in abatement and motion to compel arbitration under the terms of the above contract.

On November 24, 1964, Thomas J. Josey, as a joint employee of REA and Missouri Pacific, injured himself during the course and scope of his employment. That same day Josey had written for him a letter to REA detailing the nature of his injuries. As a joint employee, Josey was entitled to both Workmen's Compensation benefits from REA, and he was entitled to Federal Employers Liability benefits from Missouri Pacific. In addition, Josey was entitled to disability benefits from the Railroad Retirement Board. Within a few days after the letter to REA, Josey filed a claim for benefits with the Railroad Retirement Board. On December 18, 1964, the Railroad Retirement Board sent a "Notice of Lien" to W. L. Baker, Assistant Claims Attorney for the Missouri Pacific. That letter stated that Thomas J. Josey had injured himself on Missouri Pacific Train No. 55 while performing train service. The purpose of the letter was to put Missouri Pacific on notice of the Railroad Retirement Board's interest in any F.E.L.A. benefits which might be paid to Josey by Missouri Pacific. Shortly thereafter, Missouri Pacific dispatched a claims investigator to determine the cause of the accident and the extent of Josey's injuries. A written report was made to Mr. Baker of this investigation on January 14, 1965 in which it was suggested that appellee permit the Aetna Casualty and Surety Company, REA's compensation carrier, to handle the matter.

On May 20, 1965, Frank Glash, Claims Representative of the Aetna Casualty and Surety Company, sent formal notice in writing to Missouri Pacific detailing the facts surrounding Josey's injuries.

On July 21, 1965, two months after Aetna had given notice to Missouri Pacific, Josey filed suit against REA Express and Missouri Pacific for damages as a result of the injuries received while he was acting as a joint employee of the two named defendants.

Almost a year later, on June 18, 1966, Missouri Pacific filed a cross-action against REA claiming that it had not received formal written notice as required by Article 13, Section 4(d), of the Standard Express Operations Agreement. On August 10, 1966, the cross-action of Missouri Pacific was severed from the main suit of T. J. Josey against the parties here.

On December 6, 1966, Missouri Pacific, after notice to REA, settled the claim of T. J. Josey for approximately $6,000, and on December 8, 1966, judgment was entered in favor of Missouri Pacific in accordance with the terms of the settlement agreement. The settlement was a favorable one, and the suit by Josey against REA was voluntarily dismissed.

On May 20, 1968, nearly two years after Missouri Pacific's above cross-action was filed against REA Express, REA filed its plea in abatement and motion to compel arbitration. After the cross-action was filed, however, REA answered Missouri Pacific's first set of request for admissions, the parties took the deposition of C. K. Bell upon the issues of notice and liability, and both parties hereto made a motion to sever the cross-action from the main suit, which motion was presented to the trial court on August 10, 1966. In such motion for severance the parties requested that the cross-action be continued on the docket of the court. Requests for admissions were made by both parties. Also on June 28, 1968, Missouri Pacific filed interrogatories to REA inquiring whether REA had ever made written demand for arbitration, as required by the contract. Such interrogatories were not answered finally until November 1, 1968, at which time REA answered that written notice had been given on September 16, 1968. Prior thereto, on July 8, 1968, REA had answered the interrogatories by stating that it had no obligation to appoint an arbitrator until arbitration proceedings were initiated by Missouri Pacific. The trial court overruled REA's plea in abatement and motion to compel arbitration by order dated December

20, 1968, and in such order the court recited that it had heard the presentation of evidence and argument of counsel. The evidentiary record of the hearing on such plea in abatement and motion have not been brought forward to this Court, and we are not apprised of what occurred at the hearing.

On February 3, 1969, the cross-action of Missouri Pacific came on for trial. After both sides had rested, the trial court withdrew the case from the jury and rendered judgment in favor of Missouri Pacific. It is from this judgment, including the court's action on the plea in abatement and motion, that this appeal has been perfected.

Appellant's first contention is that the trial court erred in granting judgment for Missouri Pacific, because the undisputed evidence shows the accident was due to the sole negligence of Missouri Pacific. There is no contention on the part of appellee that the negligence of Missouri Pacific was not the sole cause of the injuries to T. J. Josey. Rather, the suit is on the contract. Article 13, Sec. 4(d) of the Operations Agreement states as follows:

"In case any claim is asserted or suit is brought against a party hereto based upon allegations making the other party liable, either solely or jointly, the party against which claim is asserted or suit is brought shall give *prompt notice thereof in writing* to such other party * * * A party failing to give the notice required shall bear the entire loss * * *." (Emphasis added).

Josey was injured on November 24, 1964. On the same day his fellow messenger, C. K. Bell, wrote a letter to the manager of REA, Mr. Hardebeck, which letter was received in the offices of REA and stamped with an REA stamp which noted that it was received by REA on November 25, 1964. After receiving the above letter and a telephone call from Josey, REA failed to give any written notice to Missouri Pacific. The letter from the Railroad Retirement Board dated December 18, 1964 to Missouri Pacific in which a claim for reimbursement from any sum of money payable by Missouri Pacific on account of liability based on Josey's injuries cannot supply the written notice required of REA by the agreement above, nor can the letter written to Missouri Pacific by Frank Glash, adjuster for Aetna, on May 18, 1965, claiming that the railroad was liable, serve to supply the written notice necessary under the terms of the contract. The latter letter was sent approximately six months after the Josey accident. Such indirect notices were not given by REA, and they are not sufficient to comply with the clear Standard Express Operations Agreement.

The contract requires that a party against whom a claim is asserted give written notice of such claim to the liable party, and we hold that Missouri Pacific was not in default of its contract. In fact, REA concedes that Missouri Pacific would ordinarily be correct in its contention that REA must bear the entire loss under the above circumstances, but REA contends as a defense that Missouri Pacific was itself in default of the contract by reason of its failure to give written notice to REA after receiving the notices of the Josey accident in the form of the letters above. We do not pass upon what legal effect a subsequent default of the contract by Missouri Pacific would have in this case, because we have held that the railroad was not in default of its agreement.

REA further contends that the trial court erred in rendering judgment as a matter of law and that the above facts create issues for the jury to determine. It is true that the facts are to be construed most favorably to the appellant, and if there is any fact issue for the jury the trial court erred in withdrawing the case from the jury and rendering judgment. See Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60. Ordinarily, notice is a question of fact which is foreclosed by the decision of the trier of the facts, and it becomes a question of law

only when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence. O'Ferral v. Coolidge, 149 Tex. 61, 228 S.W.2d 146, 148, (Tex.Sup.). The trial court held as a matter of law that the notices were not sufficient and prompt. The record clearly shows that Missouri Pacific did not discover that a defect in the car door was claimed until weeks or months after the accident, and by that time it was impossible to make an investigation to determine the condition of the door at the time of the accident. In Klein v. Century Lloyds, 154 Tex. 160, 275 S.W.2d 95, written notice 32 days after the accident was not as soon as practicable as a matter of law. State Farm Mutual Automobile Ins. Co. v. Hinojosa, 346 S.W.2d 914, (Tex.Civ.App.), writ ref., n. r. e., holds likewise, that 40 days is not as soon as practicable as a matter of law. While the latter two cases deal with an individual person's duty to read his insurance policy and comply therewith, REA would be under no less duty.

REA did not plead waiver of prompt written notice or strict compliance with the contract, and no contention is made in that regard. The trial court's actions were proper, and appellant's contentions are overruled.

■ The final contention of appellant is that the trial court erred in overruling REA's plea in abatement and motion to compel arbitration. The trial court, after a hearing, overruled the plea in abatement and motion on December 20, 1968, and in the court's order there is a recitation that evidence was heard on the plea and motion. Appellant has brought no statement of facts concerning such plea and motion to this Court for review. We, of course, cannot determine what occurred at such hearing, whether the Operations Agreement was proven or whether waiver of the arbitration agreement was shown or admitted. With no statement of facts before us we must presume that there was evidence to support the trial court's find-

ings. See Englander Co. v. Kennedy, 428 S.W.2d 806, (Tex.Sup.).

Assuming, however, that the statement of facts above was unnecessary for this review, and that it is possible to determine from the record before us whether the trial court erred in overruling the plea and motion to compel arbitration, we hold that compulsory arbitration under the Operations Agreement is not enforceable in Texas, if Texas law governs, and that arbitration has been effectively waived by REA if federal law is applicable.

Article 13, Sec. 4(g) provides that any matters arising out of the application of Article 13 (quoted from above) shall be settled by arbitration. Article 15 provides for the manner in which the arbitration is to be conducted and also provides that both parties are to be bound by all issues and controversies submitted under the arbitration agreement. The contract of the parties became effective October 1, 1959. Article 15, Sec. 4(a) provides that disagreements between the parties shall be referred to arbitration "upon written notice by either party to the other, specifying the issue or issues to be arbitrated." The Operations Agreement further provides:

"This agreement is made in the State of New York and questions of its interpretation and effect shall be governed by the laws of that State."

■ So far as we can determine, no motion was made by REA to the trial court to take judicial notice of the laws of New York under Rule 184a, Texas Rules of Civil Procedure, and New York law concerning arbitration was not proven. While New York law provides complete compulsion and full enforcement of arbitration agreements concerning disputes to arise in the future, an agreement that all differences arising under a contract shall be submitted to arbitration relates to the law of *remedies,* and the law that governs remedies is the law of the forum, in this case Texas law. Gantt v. Felipe Y Carlos Hurtado & CIA, 297 N.Y. 433, 79 N.E.2d 815, 818, (1948);

Meacham v. Jamestown, F. & C. R. Co., 211 N.Y. 346, 105 N.E. 653; Shafer v Metro-Goldwyn-Mayer Distributing Corp., 39 Ohio App. 31, 172 N.E. 689, (1929); 6 C.J.S. Arbitration and Award § 16, p. 162.

On January 1, 1966, the Texas General Arbitration Act became effective. Art. 224–238, Vernon's Ann.Tex.Civ.St. The statute provides that the amended act applies only to *agreements* made subsequent to the taking effect of the Act, and it consequently has no application to this controversy. Prior to the effective date of the Texas statute as amended, this state recognized common law arbitration and statutory arbitration of existing disputes or accrued causes of action. No procedure was made available for future disputes or causes of action. See Carpenter v. North River Insurance Company, 436 S.W.2d 549, 552, (Tex.Civ.App.), writ ref., n.r.e. Under the common law an agreement to submit a matter to arbitration was revocable by either party to the agreement at any time before an award was made. This is also true of the Texas statutes in effect at the time the Operations Agreement became effective and at the time Josey was injured. Deep South Oil Co. of Texas v. Texas Gas Corp., 328 S.W.2d 897, 906, (Tex.Civ.App.), writ ref., n. r. e. A provision in an executory contract that any disputes arising out of the contract were to be settled by arbitration was against public policy in attempting to oust the courts of jurisdiction. 6 Tex.Jur.2d, Sec. 20, p. 56. Therefore, Texas law in effect at the time can be of no benefit to appellant, since arbitration was procedural and under these circumstances could not be enforced in a Texas court. And see Stumberg, Conflict of Laws, (3rd Ed.), pp. 271–276.

However, on August 20, 1968, appellant requested admissions of fact from appellee wherein the railroad admitted that it owns tracks in states other than Texas and that it also operates trains which cross state boundaries. In addition, the railroad admitted that REA Express is authorized by virtue of the Express Operations Agreement to conduct an express transportation business on the lines of Missouri Pacific and that such business would involve shipments of freight or express involved in interstate commerce crossing state boundaries. The railroad company also admitted that the original cause of action filed by Josey originated when he was injured on a train departing from Texas to a point outside the State of Texas. Thus, it was clearly shown that the Operations Agreement did contemplate, and in fact was. a contract evidencing a transaction involving interstate commerce.

Appellant contends that by reason of the above, federal law controls this case, specifically 9 U.S.C.A. Sections 1–14, the Federal Arbitration Statutes. The Federal Arbitration Act, declaring arbitration agreement affecting commerce or maritime affairs to be valid, enforceable, and irrevocable, is a declaration of national law equally applicable in state or federal courts. Robert Lawrence Company v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959). But the right to arbitration, like any other contract right can be waived. Cornell & Company v. Barber & Ross Company, 123 U.S.App.D.C. 378, 360 F.2d 512; American Locomotive Co. v. Gyro Process Co., 185 F.2d 316 (6 Cir.).

In the present case REA became aware of Missouri Pacific's claim about June 18, 1966, the date of the filing of the cross-action alleging breach of the Operations Agreement. REA's written demand for arbitration, pursuant to the terms of the contract, was not made until September 16, 1968, almost 27 months after the filing of the cross-action. However, REA had filed its plea in abatement and motion to compel arbitration on May 20, 1968, about 23 months after becoming aware of appellee's claim. After the cross-action was filed the parties continued to use the authority and powers of the court for various purposes. Requests for admissions were made and answers were given, depositions were taken, and the parties made a joint motion for

severance with a request that the cross-action be continued on the docket of the court. REA contended until a late date that it was the duty of Missouri Pacific to initiate the arbitration proceedings, apparently ignoring the contractual provision that the party desiring arbitration give written notice to the other party specifying the issue or issues to be arbitrated. We hold that the actions of REA in waiting almost two years to take any action toward arbitration, together with the other factors mentioned above, effect a waiver of the compulsory obligation to arbitrate disagreements of the parties as a matter of law.

■ In Carcich v. Rederi A/B Nordie, 389 F.2d 692, (2d Cir. 1968), the court found no waiver, because the issue of arbitration was raised at an early date and continuously asserted, and the court further held that participation in a lawsuit standing alone does not constitute a waiver. The court held, however, at p. 696, footnote 7, that sufficient prejudice to infer waiver might be found if the party seeking the stay took advantage of judicial discovery procedures not available in arbitration. In our opinion, Missouri Pacific was materially prejudiced by participation of REA in the pending lawsuit both by its failure to invoke arbitration for an extremely long period of time and by use of the pending lawsuit to gain relevant information by way of admissions of facts, particularly under Rule 169, Texas Rules of Civil Procedure.

■ In Sucrest Corporation v. Chimo Shipping Limited, 236 F.Supp. 229, (D.C., N.Y., 1964) a case where the contract provided for arbitration within six months, the court held that both parties to an arbitration agreement or either of them may by their conduct waive their right to arbitration, and that dilatory conduct or delay, in the face of a known duty to act, constitutes a waiver where such conduct is inconsistent with an intention to rely upon arbitration. The Operations Agreement here required that the party desiring arbitration give written notice to

the other party specifying the issue or issues to be arbitrated. It is the law that where a contract calls for something to be done, but does not specify a time, the courts will interpret such a provision to mean that it must be done within a reasonable time. Hulme v. Sweetman Construction Co., 230 F.2d 66, (10th Cir. 1956); Berne v. Keith, 361 S.W.2d 592, (Tex.Civ.App.), writ ref., n. r. e.; Soundview Woods Inc. v. Town of Mamaroneck, 14 Misc.2d 866, 178 N.Y.S.2d 800, (N.Y.App., 1958). And see Mattern v. Herzog, 367 S.W.2d 312, 318, (Tex.Sup.). Whether a waiver of the right to arbitrate is accomplished by implication in a given case is to be determined from the particular facts and circumstances. After careful consideration of the record before us, we have concluded, in the event federal law is applicable, that appellant waived its right to arbitration as a matter of law. Consequently the trial court committed no error in rendering judgment in favor of appellee.

The judgment of the trial court is affirmed.