[Civ. No. 1885. Fourth Appellate District.—May 24, 1938.]

J. G. LEGGATE, Appellant, v. JAMES PORTER, Respondent.

Walter L. Maas, Jr., for Appellant.

Benjamin W. Henderson for Respondent.

MARKS, J.—Plaintiff brought this action to recover $9,198.10 principal, besides interest, on four certificates of deposit issued by the Bank of Ocheyedan in Iowa. Defendant had judgment and plaintiff appealed.

The Bank of Ocheyedan was a private bank and was owned and operated by defendant. On September 2, 1930, the District Court of Iowa in and for the County of Osceola appointed A. J. Salland receiver of the bank "with power and authority to conserve the assets of said bank, to convert said assets into cash when he believes the same necessary and to dispose of said assets without converting the same into cash under proper authority of Court and to perform such other duties as may become necessary and as directed by the orders of this Court".

The receiver qualified and entered on the performance of his duties. Claims were made in the receivership proceed-

ings on the four certificates of deposit in question here. They were allowed and approved and the receiver paid three dividends on them totaling fifteen per cent of their face value. The receivership is still pending in the Iowa court and the claims have neither been released in nor withdrawn from that proceeding.

The main question presented for our decision is the right of plaintiff to pursue defendant in this action, he being the sole owner of the bank, and to recover and collect a judgment against him, based on a liability of the bank, during the pendency of the receivership proceeding in which plaintiff had appeared and presented his claims and upon which he had been paid substantial dividends by the receiver.

 As the obligations on which this action is brought were made and are payable in Iowa, and as the receivership is pending in that state, it is obvious that reference should be had to Iowa law pertinent to the subject (*Sullivan* v. *Shannon*, 25 Cal. App. (2d) 422 [77 Pac. (2d) 498]), as that law must be determinative of some of the issues presented here. No Iowa statute law is cited to us and none appears to have been cited to the court below. The Iowa statutes are not available to us here. We will, therefore, consider this phase of the case in the light of the citations to and the discussions of the Iowa law contained in the three cases decided by the Supreme Court of that state to which we have been cited. (*Bierma et al.* v. *Ellis*, 212 Iowa, 366 [236 N. W. 402]; *Ellis et al.* v. *Citizens Bank of Carlisle*, 218 Iowa, 750 [251 N. W. 744]; *Day* v. *Power et al.*, 219 Iowa, 138 [257 N. W. 187].)

 It would seem that private banks are permitted to operate in Iowa. Apparently they need not be incorporated. However, such a bank seems to have an entity separate and apart from that of its owner and to be something more than a fictitious name under which its owner may conduct a banking business. A receiver may be appointed to take over the assets of such a bank and to administer and wind up its affairs. During such process assets of the bank are in the custody of the court. Such custody does not include the separate assets of the owner not invested in the bank. However, such separate assets form a fund which can be used when necessary in liquidating the liabilities of the bank. Such funds of the owner may be resorted to by the receiver in

a separate suit against the owner after authorization by the court. During the pendency of the receivership proceedings, and before their termination, a creditor of the bank who has filed and had allowed his claim in the receivership proceedings will not be permitted to obtain judgment against the owner for the amount of his claim. If, during such period, he sues the owner his suit will be abated (not dismissed) until such time as the receivership proceedings are concluded.

From the foregoing it would seem that the separate assets of the owner of the private bank do not come under the control of the receiver at the time when he is appointed and qualifies. They do, however, constitute a reserve fund to which resort may be had to pay the liabilities of the bank upon which the receiver may draw, if necessary, to liquidate the bank's debts. Thus they should be regarded as a fund for the benefit of all the creditors who have approved claims filed in the receivership. During the receivership proceedings each such creditor should have an equal proportionate benefit from this fund and no one such creditor should profit from it to the detriment of other creditors or the receiver.

In the case of *Ellis* v. *Citizens Bank of Carlisle, supra,* it appears that a private bank was owned by a group of persons which the court denominated a partnership. The receiver was ordered to bring suit against these owners to secure funds with which to liquidate the bank's liabilities. Such a suit was filed but was never brought to trial. Instead, a compromise was effected between the owners and the receiver which was approved by the district court. In upholding the procedure, the Supreme Court of Iowa said:

"Has the district court wherein the receivership is pending power to authorize the receiver to compromise these claims with the respective partners at an amount less than the amount actually due thereon? The appellants argue that the title and ownership of their various deposit claims, together with the right to enforce or release same as against the various partners of said bank, is an individual personal right of such depositor against the individual partner. They are probably justified in this position, but this does not answer the question. Under our holding in the former appeal, they went into the equity court and submitted themselves to its jurisdiction in the receivership matter, and, having done so, they are subject to all the rights and powers that an equity court

possesses under such circumstances and whatever order the court properly makes under such circumstances is binding on them. . . .

"Under the Iowa practice, the receiver is appointed in an equity court and is an arm of the court. By the filing of their claim with the receiver and having same approved by the receiver, appellants, together with all other depositors and all parties concerned in the case, are before such court, and all their claims, whatever they may be, are within the jurisdiction of such equity court, and appellants are bound by the finding of such court determining their respective rights."

The case of *Bierma* v. *Ellis, supra,* involved the liquidation through receivership of the same insolvent bank. Several creditors of the bank whose claims had been filed and allowed in the receivership proceeding, sued the owners of the bank on their demands. These suits were dismissed in the trial court. In discussing this situation, the Supreme Court of Iowa said:

"The case presents an unusual and exceptional situation. A court of equity had acquired jurisdiction of the partnership and of all of the partners. The partnership was insolvent, and dissolution thereof was sought. A receiver was appointed and was specifically clothed with authority to not only sequester the assets of the partnership and apply them upon the debts of the partnership, but also to proceed to collect from the various partners any deficiency that might remain to satisfy the claims in full of all creditors of the partnership. Under order of court, due notice was given to claimants to file their claims, and the appellants came into said proceeding and filed their claim, which has not been withdrawn or dismissed. They thereby subjected themselves to the jurisdiction of the court in said receivership matter, and sought their relief under the conditions then existing in regard to said receivership matter. We think, in view of the peculiar situation disclosed in the case, that the appellants have elected their remedy, and that in any event the court should have entered an order as prayed in the intervener's petition staying and abating the prosecution of appellants' independent action against the individual partners until the completion of the proceedings in the receivership case. . . .

"The record shows that the appellants, as plaintiffs, stood upon the ruling on their motion or demurrer to the petition

of intervention, and thereupon the court entered an order dismissing the appellants' petition. Such order should not have been entered under the circumstances, and should not constitute a bar to further prosecution of appellants' cause of action should occasion arise therefor. The order should have been an order in abatement as prayed for by the intervener abating the appellants' cause of action until the final determination of the action in which the receiver was appointed. The practical result, however, may be the same.''

In discussing election of remedies in *Martin Music Co.* v. *Robb*, 115 Cal. App. 414 [1 Pac. (2d) 1000], it was said:

''Referees in bankruptcy are judicial officers clothed with power to adjudicate in the first instance over the allowance or disallowance of claim presented against the bankrupt's estate and their findings are entitled to the respect and credit given to officers acting judicially. The allowance of the claim is an adjudication of all issues properly presented for determination and constitutes a final judgment which is binding upon both the creditors and the bankrupt. (7 C. J. 323, sec. 529.)

''Appellants having filed a claim in the bankruptcy proceedings and it having been allowed in the full amount of the contract price by the referee, this decree or order allowing the claim of appellant was final. The case of *Elmore, Quillian & Co.* v. *Henderson, etc.*, 179 Ala. 548 [43 L. R. A. (N. S.) 950, 60 So. 820], citing *Cromwell* v. *County of Sac*, 94 U. S. 351, at page 371, 96 U. S. 51–63 [24 L. Ed. 195 and 681], definitely held that a decree of the trustee in bankruptcy ordering the allowance of a claim arising under a contract was a bar to a subsequent suit on the contract and operated as an estoppel.''

In the case of *Strain* v. *Superior Court*, 168 Cal. 216 [142 Pac. 62, Ann. Cas. 1915D, 702], it appears that a receiver was appointed to take possession of the property of the California Development Company, part of which was in California and part in Mexico. Strain and others interfered with the receiver's possession of the Mexican properties. The trial court punished them for contempt. In holding that the trial court had jurisdiction to punish a contempt where the act constituting it was committed without the jurisdiction of the trial court and in a foreign country, our Supreme Court said:

"It appears that the petitioners, though not parties to the action wherein Holabird had been appointed receiver, were nevertheless residents within the territorial jurisdiction of the court when the alleged interference with the Holt Canal took place and were such when this proceeding in contempt was commenced against them.

"It is the duty of a court appointing a receiver to protect him in the discharge of his duties and in the control and possession of the property in his custody as such against any one interfering therewith whether a party to the proceeding in which the receivership is created or not, and the jurisdiction of the court to do this is not affected by the fact that the act of interference was committed, as in this case, outside the territorial jurisdiction of the court if the alleged offenders are within its territorial jurisdiction. (High on Receivers, 4th ed., sec. 164; Smith on Receivers, sec. 47; *Chafee* v. *Quidnick Company,* 13 R. I. 442; *Richards* v. *People,* 81 Ill. 551; *Sercomb* v. *Catlin,* 128 Ill. 556 [15 Am. St. Rep. 147, 21 N. E. 606].)

"No question is made here but that the court had jurisdiction over the persons of petitioners in this proceeding and if the act charged to have been committed by them constituted an interference with the duties of the receiver respecting the property in his control and possession as such, then under the authorities just cited they were subject to punishment by the superior court and its action in that respect was justified."

As a converse to the foregoing rule it should follow that California courts should recognize the authority of the Iowa court over the claimants who appeared in the receivership proceedings and follow the laws of Iowa governing this situation as those laws are interpreted by the Supreme Court of that state.

We have reached the conclusion that plaintiff, by filing his claims with the receiver, having them approved by him and accepting payments on account from him, has elected his forum and must be held to the remedies it affords. It is true that the receiver has not been ordered to sue defendant for the benefit of the bank's creditors but if such suit be necessary it may be ordered by the Iowa court.

In electing his forum plaintiff should not be held to any greater limitation on his action here than is imposed by the

Iowa law, which seems to permit a suit by the creditor of the bank against its owner during the pendency of the receivership proceedings and a judgment in the creditor's favor after the termination of the receivership if the claims are not fully paid in that proceeding. If the judgment before us is permitted to stand in its present form it will be a bar to any future action in California between the parties should the plaintiff desire to press his claim against defendant at a future date after the receivership proceedings have been terminated in Iowa.

The judgment is reversed with directions to the trial court to stay further proceedings until a reasonable time after either party shall produce a properly authenticated copy of the proceedings of the District Court of the State of Iowa in and for the County of Osceola terminating the receivership proceedings herein referred to and thereafter to take such proceeding in this action as may be appropriate and according to law.

Barnard, P. J., and Jennings, J., concurred.