[Civ. No. 11558.  First Appellate District, Division Two.—January 15, 1941.]

MAX ZIMMER, Appellant, v. HYMAN GORELNIK et al., Respondents.

Henry O. Wackerbarth for Appellant.

Biby & Biby and John E. Biby for Respondents.

NOURSE, P. J.—Plaintiff sued for declaratory relief as to the respective rights of himself and defendant Hyman Gorelnik concerning the division of profits in connection with business operations of the two on the theory that they were operating as partners or joint adventurers. The trial resulted in a judgment that plaintiff was not entitled to any relief. The controversies between the parties arise out of a written contract under which they began their business associations some time in August, 1935. The plaintiff alleged

that, while operating under that contract, the parties orally agreed to continue similar business connections in accordance with some of the terms of the contract relating to the division of profits. These allegations the trial court refused to let the plaintiff prove on the theory that the court was without jurisdiction to determine a controversy involving a disputed oral contract. It then found that all these allegations were untrue. In denying plaintiff any relief the court also held that the written contract was void for uncertainty.

The written contract reads as follows:

### "AGREEMENT

"This Agreement made and entered into in duplicate this —— day of August, 1935, by and between Hyman Gorelnik, party of the first part, and Max Zimmer, party of the second part, both parties being of the City and County of Los Angeles, State of California.

### "Witnesseth:

"That Whereas, the parties are now in the process of purchasing premises situated at the intersection of Virgil and Normal Avenues, in the City and County of Los Angeles, State of California, for the purpose of constructing thereon a market building; and described as the E 120' of Lots 1, 2 and 3, excepting the S 2' of the E 120' of Lot 3, Tract 1458;

"Whereas, it is the further desire of the parties hereto to form the Virgil Investment Company, a corporation, and that they are now in the process of forming such corporation for the purpose of *conducting the construction and maintenance thereof;* and

"Whereas, the party of the first part will invest in the venture the sum of Eight Thousand Dollars, ($8,000.00), and the party of the second part will invest in the venture the sum of One Thousand Dollars, ($1,000.00);

"Now, Therefore, for and in consideration of the covenants and agreements hereinafter contained, it is mutually agreed as follows:

"1. That the parties hereto shall draw a salary, as managers of *the enterprise,* on the following basis commencing with the completion of the market building; The party of the first part to receive the sum of Three Hundred Thirty-three and 33/00 Dollars ($333.33) and the party of the second part to receive the sum of One Hundred Sixty six and 67/00 Dollars ($166.67), as wages per month, provided, however,

that in the event there is not sufficient net profit in any month or months to pay unto the parties such salaries, then in that event they will receive as salaries during such month or months on the following basis: Two-thirds (⅔rds) of the net income to be paid to the party of the first part, and one-third (⅓rd) of the net income to the party of the second part.

"2. In the event a *bona fide* offer in the sum of Thirty One Thousand Dollars ($31,000.00) or more is offered for the premises the same shall be sold if either of the parties hereto desire it to be sold, and the proceeds thereof to be divided in the following manner, to wit:

"a. There shall first be deducted from the said sale price the total investment, which said sum shall be divided between the parties hereto in the following manner: eight-ninths (8/9ths) thereof to the party of the first part, and one-ninth (1/9th) thereof to the party of the second part.

"b. Of the sum in excess of the total net investment the same shall be divided in the following manner: two-thirds (⅔rds) to the party of the first part and one-third (⅓rd) to the party of the second part.

"3. In the event of dissolution or final winding up of the affairs, a division of the assets thereof shall be had on the same basis as set forth in sub-sections a and b of paragraph 2 hereof.

"In the event shares of stock be issued in the corporation to be formed, to either of the parties hereto, such party will not offer his share nor any portion thereof for sale to anyone before having first offered in writing the said shares to the other party at the reasonable market value thereof, and the other party shall have thirty (30) days within which time to accept and purchase the same.

"In the event of the death of either of the parties hereto, the other shall immediately proceed with the dissolution and winding up of the affairs of the business.

"It is understood that a contract is contemplated between the corporation to be formed, to wit, Virgil Investment Company as owner and Hyman Gorelnik and the Zimmer Construction Company as contractors wherein the latter will construct a building according to plans and specifications to be submitted and in furtherance thereof the parties hereto agree to execute and sign all documents and papers which

may be necessary or expedient thereto; losses, if any, to be borne ⅔rds by the first party and ⅓rd by second party.

"In Witness Whereof, the parties hereto have hereunto set their hands, the day and year in this instrument first above written.

"(Signed) HYMAN GORELNIK
Party of the first part
"(Signed) MAX ZIMMER
Party of the second part"

The plaintiff alleged and proved that in full accord with the terms of the contract the parties formed the corporation, constructed the Virgil Street building, operated it for a time, and divided some of the profits of operation. In April, 1937, this property was sold for $31,500 and part of the proceeds of operation, together with other money advanced by the respective parties, and money borrowed on their joint obligations, was used in the purchase of a lot on Sunset Boulevard and in the construction of a building thereon. These transactions were all made in the name of the Virgil Investment Company, but the plaintiff alleged, and attempted to prove, that the corporation was but the *alter ego* of the partners and that the entire investment in the Sunset property was preceded by the oral agreement of the parties that the operations should be conducted, and the profits should be divided in some respects similar to the manner stipulated in the written contract.

In denying plaintiff the right to prove the alleged oral contract the trial court was in error. The ruling was based upon the holding in *Transport Oil Co.* v. *Bush,* 114 Cal. App. 152 [1 Pac. (2d) 1060], but, as we will point out hereafter, that case is no longer an authority on that subject. It should be said at this point, however, that there is considerable authority in other jurisdictions in accord with the rule of the Bush case, but it would serve no useful purpose to go into foreign fields of authority when the entire subject matter is covered by our legislative enactments.

Actions for declaratory relief are authorized in this state by sections 1060 et seq. of the Code of Civil Procedure. Section 1060 reads in part: "Any person interested under a . . . written instrument, or under a contract, or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property, . . . may, in cases of

actual controversy relating to the legal rights and duties of the respective parties, bring an action in the superior court for a declaration of his rights and duties in the premises, including a determination of any question of construction or validity arising under such instrument or contract. He may ask for a declaration of rights or duties, either alone or with other relief; . . . "

It should be noted that the legislature used the word "or" after the word "instrument", and again after the word "contract"; that it did not use the word "written" before the word "contract"; and that the clause reading: "or who desires a declaration of his rights or duties with respect to another, or in respect to, in, over or upon property" begins with the word "or"; and also that this clause is not tied in to any reference to a written instrument, or to a contract, or to any kind of a written document. The language of the statute is plain and does not call for judicial construction or interpretation. Notwithstanding the early rulings of the common law courts limiting the right of action to written instruments our statute clearly broadens the scope of the action to cover controversies relating to oral contracts and obligations. And we must take the law as we find it.

In *Transport Oil Co.* v. *Bush, supra,* pp. 161, 162, the court reached the opposite conclusion saying: "The question arises, must the contract sought to be construed be in the form of an instrument in writing? Is it within the contemplation of the section that testimony shall be taken to establish an oral contract, and then pronounce judgment construing the same and declaring the intent and purpose of the parties as found in such contract? While the language of the section, literally construed, would include an oral contract, a careful consideration of all the words preceding the word 'contract' leads us to the conclusion that the portion of the section quoted and relied upon in this action must be held to refer only to a contract that is in writing, to a contract the terms of which are fixed and definite and not depending upon the oral declarations of witnesses or the memory of the parties as to the language used by them in entering into an agreement." But in *Tolle* v. *Struve,* 124 Cal. App. 263 [12 Pac. (2d) 61], the court declined to follow the rule of the Bush case, relying upon the authority of *Hess* v. *Country Club Park,* 213 Cal. 613 [2 Pac. (2d) 782]; and in *Herrlein* v. *Tocchini,* 128 Cal. App. 612 [18 Pac. (2d) 73], it was said

that the language quoted from the Bush case was *dicta,* and not controlling. In *Wollenberg* v. *Tonningsen,* 8 Cal. App. (2d) 722 [48 Pac. (2d) 738], the court, without reference to the Bush case, held that the remedy under the statute was not limited to a written instrument. In *Hamilton Corp., Ltd.,* v. *Corum,* 218 Cal. 92, 95 [21 Pac. (2d) 413], the Supreme Court dismissed the subject with the direct statement that "it has been already decided that in such actions the court may determine disputed questions of fact. *Hess* v. *Country Club Park,* 213 Cal. 613 [2 Pac. (2d) 782]; *Herrlein* v. *Tocchini,* 128 Cal. App. 612 [18 Pac. (2d) 73]. Appellant's argument is concluded by the cited cases."

Though we have found no California case which expressly overrules the Bush case, those cited reject the doctrine either by referring to it as *dicta,* or by making no reference to it. It must be apparent that the reasoning upon which the rule was based is not in harmony with the code section. ■ It would be more precise to say that the conclusion is based upon the false premise that, in a proceeding of this nature, the court is without power to determine "disputed questions of fact." That this is a false premise we need to refer only to *Hamilton* v. *Corum, supra.* Acting upon this premise the trial court ruled, in line with numerous cases cited by respondent, that it was without power to take any evidence tending to prove the existence of the alleged oral contract because that contract was denied in the answer. If the premise were sound, it would of course apply equally to a written contract if its existence is denied. The fact of the execution of a contract and its existence or present force should not be confused. Here the plaintiff sought to prove that an oral contract was executed under which he claimed some legal rights which he asked the court to determine and declare. Precisely the same proof would be necessary in a suit founded upon a written instrument. He was stopped with the objection that the evidence "would tend to prove the existence of a disputed oral contract and that it is not within the jurisdiction of this court to determine whether an oral contract does exist, and then construe it." This objection was sustained as well as that made to an offer of proof upon the same subject matter.

The error of the ruling is based upon the doctrine of the Bush case which, in turn, is based upon authorities from other

jurisdictions holding that the court is without power to determine "disputed questions of fact." Though this rule would foreclose consideration of all disputed questions of fact the courts for some reason have limited it to an oral contract—and have held that the proceeding will not lie when such a contract is involved even though its existence is not disputed. Hence, by putting one false premise upon another, a conclusion has been reached which is neither sound nor reasonable. There is no escape from the conclusion that, if as stated in *Hamilton* v. *Corum, supra,* the court may determine disputed questions of fact, it has the power to take evidence of the existence of the contract upon which the asserted rights are based, and that, so far as our code section is concerned, it makes no difference whether such contract be written or oral. See Borchard on Declaratory Judgments, pages 409, 410, where later English cases are cited involving oral contracts. Also, 16 Am. Jur., page 294; 8 Cal. Jur. Supp., pages 110–112.

These conclusions may be placed upon another principle which is equally controlling. The proceeding in declaratory relief is one in equity. The complaint pleaded facts sufficient of which were admitted to entitle plaintiff to some relief. It is the settled rule that, when a court of equity assumes jurisdiction of an equitable controversy, it will seek to administer complete relief and make a final disposition of the litigation. (19 Am. Jur., p. 281.) The record discloses a partnership contract in writing under which the parties agreed to engage in business under the corporate entity over which they had absolute control. The complaint, which was filed on January 6, 1938, joined the corporation as a party defendant. Upon evidence taken the trial court found that prior to the commencement of the action and on December 27, 1937, the corporation had been dissolved by the defendants. During the trial it developed that the operation and sale of the Virgil Street property resulted in a profit of about $7,500 and that the profit on the Sunset property was about $14,000. These profits not having been distributed, and the proper method of division being in dispute, the plaintiff was entitled to a declaration of the rights and duties of the respective parties whether upon the theory that they were partners, or joint adventurers, or that the defendants held as trustees for the plaintiff. The respondent argues that the written contract was void because uncertain in the paragraph

relating to division of the net profits. If so the uncertainty might have been cleared by the oral contract which plaintiff sought to prove. All these considerations are elements of equity and proper subjects for determination in a court of equity. To restate the proposition: it is of no matter that the plaintiff designated his complaint as one in declaratory relief so long as he has pleaded facts which would entitle him to equitable relief. When a party comes into a court of equity pleading facts which may entitle him to some equitable relief the court will assume jurisdiction of the entire controversy and grant the relief which the proof warrants though it may not be the same as that prayed for. (*Brown* v. *Anderson-Cottonwood Irr. Dist.*, 183 Cal. 186 [190 Pac. 797]; *Zellner* v. *Wassman*, 184 Cal. 80 [193 Pac. 84]; *Bank of America etc. Assn.* v. *Gillett*, 36 Cal. App. (2d) 453 [97 Pac. (2d) 875].)

For the reasons given the court erred when it denied plaintiff the right to prove the oral contract, and when it dismissed the action without giving plaintiff the relief which the facts disclosed he was entitled to. We do not discuss the other points raised except to add that this is not a case for the application of section 1061, Code of Civil Procedure, authorizing the trial court to refuse to exercise the powers where a declaration is not necessary or proper. Because the admitted facts are that the plaintiff was entitled to some relief over which the parties are in controversy, a declaration was both necessary and proper. Hence, the case comes squarely within the rule of *Henderson* v. *Oroville-Wyandotte Irr. Dist.*, 207 Cal. 215 [277 Pac. 487].

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.