[Civ. No. 13606. Second Dist., Div. Three. Dec. 19, 1942.]

DON S. ERSKINE, Plaintiff, v. CHESTER R. UPHAM, Appellant; RICHARD WILLIAM CLARK, Intervener and Respondent.

236

Joseph Musgrove, Thomas H. Cannan and Robert M. Miller for Appellant.

Musick & Burrell and Clayton Straub for Respondent.

WOOD (Parker), J.—Appeal is by defendant in intervention Chester R. Upham (also the defendant), from a judgment in favor of plaintiff in intervention Richard William Clark for the unpaid balance on an agreement to pay for an assignment of certain contracts and accounts.

Clark (the intervener) had been employed by one George Snider who was in the neon sign business. During the course of the employment Clark was injured, and as a result thereof he obtained a judgment against Snider for $5,267. Snider did not carry compensation insurance. Within a few days after the injury Snider sold his business, but retained certain conditional sales contracts and accounts receivable, of the total face value of approximately $7,300. Later, on October 28, 1939, he sold said contracts and accounts to Upham (the defendant) for $3,500, of which $1,750 was paid upon execution of the written agreement of sale and the balance was to be paid after acknowledgments of the contracts by the purchasers, and verifications of the amounts due under the contracts, had been made. On October 31, 1939, Snider assigned his contract with Upham for the unpaid balance of $1,750 to Don S. Erskine (the plaintiff). Then Upham accepted Erskine as Snider's assignee. Erskine, after having made demand for payment upon Upham, filed an action in the municipal court on January 2, 1940, for the unpaid balance under the contract assigned to him by Snider. On January 29, 1940, a previous execution having been issued

upon Clark's judgment against Snider and returned wholly unsatisfied, Clark caused an execution to be levied upon all moneys, debts and credits, in the possession of Upham, due and belonging to Snider. On February 2, 1940, Upham made a return that he was not indebted to Snider. On June 13, 1940, Clark filed his complaint in intervention in the action brought by Erskine against Upham, on the theory that the assignment by Snider to Erskine, and the sale by Snider to Upham, were fraudulent and void as to Clark, Snider's creditor. The action was transferred to the superior court for the reason that equitable issues were involved.

The judgment was that Erskine take nothing by his complaint; that the assignment by Snider to Erskine was fraudulent and void; that the sale by Snider to Upham was valid; that Upham was indebted to Snider for the unpaid balance which had been assigned to Erskine; and that Clark, the intervener, was entitled to recover the unpaid balance due from Upham to Snider.

Appellant Upham's points on appeal include the contentions, among others, that plaintiff Erskine had not performed certain conditions precedent relative to obtaining acknowledgments and verifications of the assigned contracts and accounts, and therefore the action was prematurely commenced; and that, even though the assignment from Snider to Erskine was fraudulent and void as to intervener Clark, it was valid as to Upham until it was adjudged void by a court, and therefore his "return of not indebted," in response to the levy of execution, was proper.

The court found that Snider was insolvent at the time he sold the contracts and accounts receivable to Upham and at the time he assigned to Erskine the balance remaining unpaid on his contract with Upham, and that he entered into the transactions with intent to defraud intervener Clark; that Upham had no knowledge of Snider's fraudulent intent at the time he purchased the contracts and accounts from Snider and was a bona fide purchaser for value, but that he did know of Snider's fraudulent intent at the time he (Upham) accepted Erskine as Snider's assignee.

The court further found that prior to the commencement of this action, substantially all the assignments, agreements and accounts receivable transferred to Upham by Snider had been duly acknowledged by the purchasers and those which were not duly acknowledged were guaranteed by

Erskine, and said guarantees were accepted by Upham in lieu of acknowledgments by the purchasers; that Upham had verified substantially all the unpaid balances of said contracts and agreements as represented by Snider; that Upham had taken immediate possession of the contracts and accounts receivable, checked them continuously for three days prior to entering into the contract, contacted many of the debtors, notified each debtor of the assignment, investigated the credit standing of many of the debtors, sent them demands for payment, and collected moneys on the contracts and accounts, up to March 12, 1941, in the amount of $2,114.79, and ascertained in a few instances that the balance due as claimed by the debtors varied from the amount shown on Snider's books; that at no time prior to the action did Upham notify Snider or Erskine that he had not verified the amounts due or that they were not correct; that at no time did Upham reject or return any contract or account, or assert that his assignment from Snider was not in full force and effect; that when Erskine made demand upon Upham for payment, Upham said he could not pay Erskine "because of" Clark's "attachment"; that by reason of the foregoing conduct of Upham, he had waived strict performance of the provisions in said agreement requiring that all the assignments of the contracts be acknowledged by the debtors, and that all unpaid balances be verified by Upham; that Upham was estopped to deny that all the accounts were duly made and acknowledged and verified and that $1,750 was owing under the contract; that Erskine and his assignor Snider have duly performed all the terms, conditions and obligations on their part to be performed; that there was no fraudulent misrepresentation by Snider to Upham as to the value and collectibility of the contracts, agreements or accounts receivable; that the reasonable value of the conditional sales contracts, agreements and accounts receivable was $5,000 on October 28, 1939, the date of transfer to Upham; that the plaintiff Erskine was a party to Snider's fraudulent scheme and had knowledge of Snider's insolvency at the time of the assignment from Snider to him; that the value of the assignment, had it been valid, was far in excess of the consideration Erskine gave for it and such assignment was void as to intervener Clark; that Upham owed Snider $1,750 under the contract and said sum was due prior to the commencement of this action; that by virtue of the "writs of

attachment and garnishments served upon the defendant Upham,'' Upham was indebted to intervener in the sum of $1750, plus interest at 7% per annum from the date intervener caused execution to be levied upon credits owing Snider and in the hands of Upham, and intervener's costs of suit; that Erskine had collected $285 under the contracts and he was indebted to intervener Clark for that amount and that any amount received by Clark from Erskine was to be credited upon the judgment in favor of Clark against Upham.

Defendant's motion for a new trial was denied. He contends on appeal that the evidence was not sufficient to support the trial court's finding with reference to acknowledgments of the assignments, and verifications of the unpaid balances on the contracts and agreements. Appellant argues that the procuring of the acknowledgments of the assignments to appellant, and procuring verifications of the amounts due on the contracts, agreements and accounts receivable were conditions precedent to be performed by Snider or his assignee Erskine; that there was a failure of performance as to all of the 59 accounts receivable and as to more than one-half of the 40 contracts, and plaintiff was therefore in default in the performance of the conditions precedent at the time he commenced his action.

The contract provided that, ''Said second party [Upham] hereby agrees to pay to said first party [Snider] in consideration for said *Contracts, Agreements* and *Accounts Receivable* the sum of Three Thousand Five Hundred ($3,500.00) Dollars, payable as follows: One Thousand Seven Hundred and Fifty ($1,750.00) Dollars upon the execution of this agreement and One Thousand Seven Hundred and Fifty ($1,750.00) Dollars when all the assignments of the said *Contracts* and *Agreements* have been duly made and acknowledged by the purchaser under said *Contracts* and *Agreements,* and when the unpaid balances of said *Contracts* and *Agreements,* as represented by said first party [Snider], have been *verified by the second party* [Upham] hereto.'' (Italics added.)

The accounts to be acknowledged and verified, as designated by the above proviso, did not include accounts receivable. The contract specifically set forth the property Snider was transferring to Upham as follows: *contracts, agreements* and *accounts receivable.* The provision requiring acknowl-

edgment and verification, expressly covered the *contracts* and *agreements* only. The words ''Contracts and Agreements'' were used three times in the provision to specify the accounts to be acknowledged and verified; this provision, immediately following the one assigning the contracts, agreements and accounts receivable, indicates that the parties intended to omit the accounts receivable therefrom. The subsequent actions of the parties also support this interpretation; for example, forms of acknowledgments were prepared and mailed to each purchaser regarding the contracts and agreements, but none was prepared for the debtors regarding the accounts receivable. ■ However, the testimony of appellant's employee Jackson, with reference to the accounts receivable, that he had caused statements, invoices and letters to be mailed ''to each account,'' and the evidence as to resulting payments on most of them, support the trial court's finding that substantially all the accounts receivable had been acknowledged by the purchasers. It is to be noted that the contract between Snider and Upham provided that the balance of $1,750 was to be paid when all the assignments of said contracts and agreements ''have been duly made and acknowledged by the purchaser. . . .'' Since the contract between Snider and Upham recited that Snider ''does hereby sell, assign and transfer'' all of his interest in said contracts and agreements, it appears that the assignment insofar as Snider was concerned was complete. ■ A question arises, therefore, as to the meaning of the words ''have been duly made'' as used in the provision that the balance was to be paid when the assignments ''have been duly made and acknowledged.'' The provisions of the agreement between Snider and Upham show that Snider had made the assignments and it therefore appears that the meaning which was contemplated by the use of the words ''have been duly made,'' in connection with the acknowledgments of the assignments, was that the balance was payable when the assignments were made complete by the acknowledgment of Snider's assignments by the purchasers. In referring hereafter to the provision concerning acknowledgments, the words ''have been duly made'' will be omitted, since the ultimate objective was to obtain the acknowledgments by the purchasers.

The performance of two conditions precedent was required before any right against Upham accrued under the

contract: (1) that all the assignments of the contracts and agreements be acknowledged by the purchasers; and (2) that the unpaid balances of the contracts and agreements be verified by Upham.

■ (1). It should be noted that the language of the contract required no particular person to perform the first condition, nor did it require that any particular method be employed to carry it out. Appellant maintains that Snider promised to use his best efforts to assist in the collection of the contracts; and, in fact, that when appellant purchased the contracts Snider agreed to work for him and devote his time to the contracts and secure acknowledgments of the assignments of the contracts from the purchasers acknowledging therein the balance due. Appellant, however, by his written acceptance of Erskine as Snider's assignee, released Snider from obligation under the contract. The evidence shows that Erskine did assist in obtaining the acknowledgments, and that he pursued the work diligently. Erskine testified that he "spent the biggest part of two weeks securing them," and he thought he "got them all but about three." The various contracts were introduced as exhibits at the trial and appellant repeatedly stated at the trial that payments on the contracts did not constitute acknowledgment, that some payments were made after the action was commenced, that some accounts might be uncollectible and that Snider had guaranteed, to the extent of $7,100, the accounts which totaled $7,300. The trial court correctly stated that the only two conditions precedent to appellant's performance were that the assignments be acknowledged by the purchasers and the unpaid balances verified by appellant, that financial responsibility was not "called for" and that there was no warranty as to collectibility of the accounts. It does not appear that appellant was misled by any representations allegedly made by Snider. Appellant testified at the trial, in answer to a question as to whether he believed Snider's representation, at the time of entering into the transaction, as to the value of the contracts, "I didn't believe it, no." The testimony showed further: "Q. [by plaintiff] And you entered into this transaction knowing full well, or not relying on this particular representation; isn't that a fact? ... A. That's correct ... Q. You did not expect to collect every dime that was set forth on the face of the contracts

when you bought them? A. No, Sir. Q. Did you have any idea how much you could collect, when you bought these contracts? A. Oh, probably $3,500.00 worth, I think, $4,-000.00." Appellant further testified: "When he [Snider] offered the accounts and contracts and so forth to me, I said, 'That isn't all of them;' and he said, 'No, that's all except what Erskine got;' and I said, 'Well, he took the best out, didn't he?' And he said that they were good contracts that he took out, but that he didn't know, himself, whether they were the best or not." This conversation indicated that Upham and Snider recognized the fact that some contracts were more desirable than others. The first condition precedent related only to obtaining acknowledgments from the purchasers, under the contracts and agreements, that they recognized Upham as their creditor. In the absence of some specified form of acknowledgment, any words or acts by a purchaser which did show recognition of Upham as the one to whom the balance on his contract was owing would be an acknowledgment. It follows that payments made by the purchasers to Upham constituted acknowledgments of Upham as Snider's assignee. The evidence showed that practically all of the assignments were acknowledged by the purchasers prior to commencement of the action, either by signing the acknowledgment forms previously prepared by appellant, or by making full or partial payments to Upham. One contract for $200 was not acknowledged but the evidence showed that Upham and Snider considered it valueless at the time Upham purchased the contracts. Two other unacknowledged contracts were guaranteed by Erskine and the written guarantees were delivered to Upham. Appellant maintains that these guarantees were not accepted in lieu of the purchasers' acknowledgments. He did not reject the guarantees and there was no evidence, other than appellant's statements at the trial, that he did not accept them in lieu of the acknowledgments. He retained them in his possession, which would indicate an acceptance thereof; however, payments were made subsequently on both of the guaranteed contracts. There seems ample evidence for the finding of the trial court that plaintiff had fully performed and that finding should not be disturbed. It was stated in *Scott Co. Inc.* v. *Rolkin,* (1933) 133 Cal.App. 209 [23 P.2d 1065], at page 212, "The trial court found that the work had been fully completed by respondent in a satisfactory manner, and while there is some

conflict in the evidence upon this point it is well settled that this court is bound by the findings of the trial court when there is some evidence to support such findings. (2 Cal.Jur. 921, and authorities cited.)''

█ Appellant contends that there was no proof of payment as to certain accounts at the time the action was filed, hence plaintiff was in default in the performance of the conditions precedent at the time of commencing the action and that no excuse for the default was either pleaded or proved. Assuming that some of the payments which constituted acknowledgments had been made subsequently to filing the action, the trial was conducted before a court of equity which, in making final disposition of the case, was governed by the circumstances as they existed at the time of the decree rather than at the time of filing the action. This action was filed on January 2, 1940, but did not come on for trial until May 14, 1941. At that time there was apparently no question but that it could have been properly filed. Manifestly, these facts did not prejudice appellant's rights. It was stated in *Mercer Casualty Co.* v. *Lewis*, (1940) 41 Cal. App.2d 918 [108 P.2d 65], at page 922, ''The point that the cross-complaint . . . was prematurely filed is not tenable. . . . It is a settled rule that a court of equity having jurisdiction of the parties and of the subject matter will make a final disposition of the litigation governed by the circumstances as they are shown to exist at the time the decree is made rather than at the inception of the litigation. (19 Am.Jur., pp. 281, 293.)'' █ Appellant is correct in his contention that a party may not require another to perform under a contract until he has fulfilled all conditions precedent thereto imposed upon him. Plaintiff alleged that he and his assignor had duly performed all the terms, conditions and obligations on their part to be performed under the contract. Both plaintiff and defendant offered evidence on this issue and the trial court found that plaintiff's allegation was true. It seems to be appellant's position that his obligation under the contract does not accrue until the conditions set forth are performed completely and fully, and that no limit of time for performance is involved. Following this reasoning, if only one of the purchasers involved in the several transactions should refuse to acknowledge appellant's assignment, appellant would be forever immune from liability to perform

his part of the agreement and yet might continue to collect and retain payments under the contracts. A contract must be given a reasonable interpretation and the language used therein is to govern its interpretation if the language is clear and explicit and does not involve an absurdity. The construction appellant seeks to put upon it would involve an absurdity. The reasonable and practicable interpretation of the contract would be that substantial performance is sufficient and all that the parties intended at the time of entering into the agreement. It does not appear that either party expected 100 per cent of the acknowledgments and verifications would be obtainable and sufficient evidence was introduced to support the finding that plaintiff had fully performed and substantially all the assignments had been duly acknowledged by the purchasers.

(2) Appellant's contention that the second condition precedent, requiring verifications, was not performed cannot be sustained. The evidence was sufficient to support the finding that substantially all of the unpaid balances had been verified by appellant. The record shows that employees of appellant investigated and checked these contracts and agreements for three days prior to the date of execution of the contract; that Dun & Bradstreet reports had been obtained, first over the telephone as to the majority of them and later in writing as to all of them. Each purchaser was notified of the assignment by telephone, written notices were also mailed each of them by appellant's employees and a copy thereof delivered in person by Erskine. It would be a harsh rule to require strict performance of a condition when procrastination by the promisor would delay the accrual date of his own obligation. To require it where no time is specified in which performance must be had, as in the instant case, may preclude any recovery. It is a rule that where a contract requires the doing of an act but does not specify a time within which it must be done, a reasonable time will be implied. What is a reasonable time will be determined from the circumstances in the particular case. More than two months had elapsed from the date of executing the contract to the time Erskine filed the action, and more than 1½ years had elapsed to the time of trial. It thus appears that Upham had a reasonable time within which to verify the amounts due. Upham did not at any time prior to the action, as found

by the trial court, reject any contract or contend that the amount due was incorrect and did not notify Snider or Erskine that he had not verified the amounts due. There were some questions at the trial concerning comparatively small amounts due on a few contracts, which were specifically referred to. The evidence was conflicting in most instances as to whether discrepancies as to amounts due did exist; however, the alleged discrepancies involved therein amounted in the aggregate to approximately $45. It was stipulated that the attorney for Erskine should commence actions to recover balances due on two other contracts, one of which was for $125 and the other for a balance of $75, and that any money recovered in those actions should be paid in accordance with the judgment in this action.

Appellant also attacks the findings as to waiver, asserting that waiver must be pleaded and that the pleadings alleged performance by the plaintiff and not waiver by defendant. Plaintiff did allege full performance by him and his assignor and the record discloses that they had performed all that was required of them under the written contract. Upham testified that Snider had agreed orally to use his best efforts to assist in the collections of the contracts and that he was to work for him and devote his time to them. However, when Upham agreed in writing to accept Erskine as Snider's assignee under the contract he was aware that Snider was planning to leave the state and would be unable to fulfill any such purported oral promises, and that he was relieving Snider of any such obligation, if Snider ever was bound thereby. If Erskine assumed any such oral obligation, he fully performed it since the evidence shows that he used his best efforts to secure the required acknowledgments and verifications of the contracts and he went so far as to give his personal guarantee on some of them. There was sufficient evidence for the court's finding that plaintiff and his assignor had fully performed all the terms, conditions and obligations on their part to be performed. The court also made a finding that defendant Upham had waived a strict performance of the conditions precedent. No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. It is apparent that defendant was not

prejudiced by the variance. In *Sonnicksen* v. *Sonnicksen*, (1941) 45 Cal.App.2d 46 [113 P.2d 495], it was stated at page 52, "It is a cardinal rule of equity practice that under a prayer for general relief the court may grant any relief conformable to the case made by the pleadings and the evidence . . . so as to preclude further litigation between the same parties and upon the same subject matter. (19 Am.Jur. 281, 282.) It is also an accepted rule that when a party comes into a court of equity pleading facts which entitle him to some equitable relief, the court will assume jurisdiction of the entire controversy, notwithstanding the form of the pleading, and will disregard the specific prayers in order to grant the relief which the proof warrants as within the equities of the entire case. (*Zellner* v. *Wassman*, 184 Cal. 80 [193 P. 84].)'' ▮ A waiver may be implied from the circumstances (*Miller* v. *Modern Motor Co.*, (1930) 107 Cal.App. 38, 43 [290 P. 122]). While there was some conflict, the evidence as to the actions of appellant and his authorized agents fully supports the trial court's finding that Upham waived strict performance of the provisions of the agreement.

▮ There is no merit in appellant's contention that intervener Clark, having failed in his cause of action which alleged that the sale by Snider to Upham was fraudulent, had "no connection" with appellant and that his remedy was in equity to set aside the fraudulent transfer from Snider to Erskine. The parties were in equity. They submitted themselves to its jurisdiction and, having done so, were subject to all the rights and powers a court of equity possesses under such circumstances and whatever order the court properly made, under the circumstances, was binding upon them. (*Leggate* v. *Porter*, (1938) 26 Cal.App.2d 545, 548 [79 P.2d 756].) The action was to recover the balance on Upham's contract. Both Erskine and intervener claimed the amount. Upham's defense that certain conditions precedent to the balance becoming due had not been performed, failed; therefore, Upham held the balance due, the subject of the controversy, and equity had the right to designate the proper party, if any, to the action to receive it. Intervener pleaded facts showing he was entitled to equitable relief and the court, having all the parties before it, proceeded, as was its duty, to make a final disposition of the case. It determined that Snider was Upham's creditor at the time intervener levied exe-

cution on the moneys and credits here involved in Upham's possession; that, therefore, Upham wrongfully made a return of not indebted in reply to intervener's levy and that intervener was legally entitled to the balance owing under the contract. It was stated in *Zimmer* v. *Gorelnik*, (1941) 42 Cal.App.2d 440 [109 P.2d 34], at page 448, "When a party comes into a court of equity pleading facts which may entitle him to some equitable relief the court will assume jurisdiction of the entire controversy and grant the relief which the proof warrants. . . . [Citing cases.]" It follows that where equity has acquired jurisdiction for one purpose, it will retain it to the final adjustment of all differences between the parties arising from the cause of action presented.

 Appellant's further point, that a creditor of a fraudulent transferor has no cause of action against a debtor of a fraudulent transferee and that intervener must look to the fraudulent transferee for his recovery, is in part a restatement of the last point covered. It was found by the court that appellant was the debtor of the fraudulent transferor Snider at the time the writ of execution was served upon him, and that appellant was aware Snider was his creditor by reason of his knowledge of the fraudulent nature of the transaction between Snider and Erskine. Section 720 of the Code of Civil Procedure provides in part, "If it appears that a person . . . alleged to have property of the judgment debtor, or to be indebted to him . . . denies the debt, the judgment creditor may maintain an action against such person . . . for the recovery of such interest or debt. . . . " The judgment creditor had a right to follow Snider's property, and have his rights declared thereon.

 Appellant argues that even though the assignment from Snider to Erskine was void as to Clark, it was valid and was a transfer of the legal title so far as he, appellant, was concerned until a court declared it void and that, therefore, his return of not indebted was proper since it was made prior to the litigation here involved. Upham, having knowledge of and acquiescing in the fraudulent transaction, should not be permitted, by his own wrong in recognizing the fraudulent transfer by the judgment debtor, to defeat a recovery by the judgment creditor of the balance due at the time of service of the writ of execution. If Upham's return of not indebted was proper, then the judgment creditor would have been entitled to recover only the amount remaining unpaid

the fraudulent transferor and transferee at the date of judgment, and any amounts which had been paid between the date of levy and the date of the court's decree would be lost to the judgment creditor. Since the assignment between Snider and Erskine was void as far as the judgment creditor Clark was concerned, the debt due from Upham was to be treated as a debt due from him to Snider subject to the right of the creditor to levy execution thereon. In the case of *Butler* v. *San Francisco Gas, etc. Co.,* (1914) 168 Cal. 32 [141 P. 818], which was similar in several respects to the present case, it was stated, in quoting from another California case, at page 39, " 'So far as existing creditors are concerned, the title and ownership of the property remained in the fraudulent grantor as fully as though no transfer had been attempted.' " Section 716 of the Code of Civil Procedure provides that: "After the issuing of an execution against property, and before its return, any person indebted to the judgment debtor may pay to the sheriff . . . the amount of his debt, or so much thereof as may be necessary to satisfy the execution; and such officer's receipt is a sufficient discharge for the amount so paid."

Appellant also contends that it was an abuse of discretion to adjudge costs against a party not involved in the particular part of the action in which costs were expended. This was an equitable action in which costs might have been allowed, apportioned, or withheld in the discretion of the court. (Code Civ. Proc., § 1032, subd. (c).) Upham, by making his return of not indebted, caused Clark to intervene in the action in an attempt to reach the same credits he had attempted to reach previously by execution. It does not appear that there was an abuse of discretion in allowing costs.

A further point presented by appellant is that a garnishor acquires only such rights against a garnishee by virtue of a garnishment as a creditor of the garnishee would have. Appellant cites the *Estate of Bennett,* (1939) 13 Cal. 2d 354 [90 P.2d 84, 126 A.L.R. 771], and *Walker* v. *Doak,* (1930) 210 Cal. 30 [290 P. 290], to support his argument that an attaching or judgment creditor takes only such rights or interest as his debtor had at the time of the service of the writ of attachment or execution. In neither of the cases cited by appellant did the garnishee hold any assets belonging to the judgment debtor at the time of levy of execution. In the instant case defendant Upham did hold the unpaid balance

on the contract with Snider at the time of levy and any assets he had allowed Erskine to acquire thereafter were not deductible from the balance until Erskine had paid such amounts to the intervener. The judgment was just and equitable in requiring appellant to pay the amount to Clark which remained unpaid to Snider under the contract at the time of the levy of execution.

A judgment will not be reversed except for error prejudicial to the appellant; i.e., error which substantially affects his legal rights and obligations. (*Bank of America* v. *Gillett*, (1940) 36 Cal.App.2d 453, 455 [97 P.2d 875].) The appellant has failed to show such error.

The judgment is affirmed.

Schauer, P. J., concurred.

Bishop, J. pro tem.—I concur in the judgment.