[Civ. No. 39080. Second Dist., Div. Five. Oct. 31, 1972.]

POTRERO HOMES, Plaintiff and Respondent, v.
WESTERN ORBIS COMPANY, Defendant and Appellant.

## Counsel

Ambrose & Malàt, Gerald A. Malat and Stanley Arenberg for Defendant and Appellant.

Cohen, Whitfield & Osborne and Theodore J. England for Plaintiff and Respondent.

## Opinion

**ASHBY, J.**—Respondent, Potrero Homes (hereinafter, Potrero), obtained a judgment of $29,515.53 plus interest and costs from appellant, Western Orbis Company (hereinafter, Western), in an action based upon a contract wherein appellant promised to pay for a portion of Kimber Road to be constructed by respondent.

Both *Western* and *Potrero* are highly sophisticated and experienced building developers in Southern California. In 1966 Western owned a

parcel of 550 acres encumbered with a deed of trust in favor of United California Bank securing a promissory note in the amount of $3,300,000. Potrero was the owner of a large parcel of real property adjoining Western's property on the west and encompassed by "Tentative Tract Map No. 1928-1."

The "Tentative Tract Map" as well as the master plan of the City of Thousand Oaks required the extension of a county highway known as Kimber Road through the entire width of Potrero's property, ending at the west boundary of Western's property. Although Western had another access to its property, the construction of Kimber Road to its property line would give it another good access.

Sometime in 1966 the parties entered into negotiations regarding the construction of Kimber Road. General meetings were held between the principals and attorneys. Potrero represented that it did not then plan to build Kimber Road as their tract No. 1928-1 was not ready for development, but if Western would pay the cost of construction of the Kimber Road extension, it would accelerate its construction. In addition to this matter, the parties also negotiated regarding slope construction and drainage rights.

By October 4, 1967, negotiations had progressed to the point where Western mailed to Potrero a draft of a proposed agreement executed by Western. This draft, when introduced at trial, appeared to have been executed by Potrero. However, since it is not the agreement sued upon, and since there is no evidence that it was executed with contractual intent, we regard only the contract executed on March 7, 1968, as controlling the contractual relationship of the parties.

In "Article A" of the contract Potrero promised: (1) to grant a public road easement to the county for Kimber Drive; (2) to grant temporary slope construction easements to Western along the common boundary; (3) to construct the permanent road improvements of Kimber Drive described and estimated to cost $29,515.53 within 90 days after the deposit by Western of that sum with Potrero; (4) to use due diligence in obtaining the approval of said construction by the appropriate governmental agency; and (5) to allow Western to examine the bids received by Potrero for the construction.

In "Article B" Western promised: (1) to grant to Potrero and the county an easement to discharge storm waters onto its property; (2) to grant slope construction easements to Potrero; and (3) to pay the estimated $29,515.53 cost of construction of the portion of Kimber Road not later

than 10 days after Potrero "advises that [it] is ready to construct the improvements" and has delivered to the county the grant of public road easement of Kimber Drive, and has delivered to Western the grant of the temporary slope construction easements.

"Article C" of the contract provided that Potrero could start construction of the road within 60 days from the date of execution of the agreement, and in the event that it did not do so, then Western could request the construction and if it was not commenced within 30 days after said request, then Western could commence construction itself. "Article C" also provided that all plans and specifications "shall be approved by [the parties'] engineers and appropriate governmental agencies prior to construction." Another provision of "Article C" provided that Potrero would pay any cost of performing said work in excess of $29,515.53 and that Potrero would refund any sum deposited in excess of the actual cost. This article also provided: "Unless otherwise terminated earlier, the rights and obligations set forth herein shall terminate on December 31, 1968."

The pertinent part of "Article D" reads:

"Notwithstanding the terms and provisions of this agreement, if during the period of this agreement, and before Western has deposited funds with Potrero in accordance with Article B paragraph 3 herein, Western shall transfer or convey the Western property or some person, party, or company other than Western or its subsidiaries shall acquire the Western property, Western shall have no further obligation hereunder to Potrero or any other person, party, or company."

Prior to the execution of this contract, the United California Bank recorded on January 22, 1968, a notice of default against Western on the promissory note and deed of trust that it held.

With regard to the circumstances surrounding the execution of "Article D" the trial court made the following findings of fact which are supported by the testimony of Mr. Cohen, Potrero's attorney.

"10. On March 7, 1968, defendant [Western] knew and plaintiff [Potrero] did not know a Notice of Default and Election to Sell Under Deed of Trust had been filed for record with the County of Ventura on January 22, 1968 on behalf of the beneficiary of the deed of trust then existing on defendant's real property as described in the contract.

"11. On March 7, 1968, defendant expressly and falsely represented to defendant [sic-plaintiff] that it knew of nothing then pending which would impair defendant's ownership of the property described in the contract.

"12. On March 7, 1968, defendant knowingly concealed from plaintiff the fact of recording of the instrument as set forth in Finding No. 10.

"13. Plaintiff reasonably and justifiably relied upon defendant's representation as set forth in Finding No. 11.

"14. Plaintiff reasonably and justifiably relied upon defendant's conduct in concealing the fact of the recording of the instrument set forth in Finding No. 10.

"15. The representation found as a fact in Finding No. 11 and the nondisclosure found as a fact in Finding No. 12 were material and relevant to the subject matter of the Contract.

"16. The representation found as a fact in Finding No. 11 and the nondisclosure found as a fact in Finding No. 12 were done by defendant with an intent to defraud and deceive plaintiff and to induce plaintiff to enter into the Contract."

On February 28, 1968, Potrero delivered to the City of Thousand Oaks the grant of a public road easement of Kimber Drive as specified in "Article A." On April 17, 1968, Potrero wrote Western and advised that it was ready to construct the improvements referred to in "Article A" in accordance with the approved plans and specifications for the construction of Kimber Road, that it had delivered the easement grant to the city, that it offered to deliver to Western the grant of temporary slope construction easements as specified in "Article A" if needed and requested by Western. This letter further advised that pursuant to the terms of the contract, Western had 10 days within which to deposit the sum of $29,515.53.

Western responded by asking for proof of the easement grant and by requesting to see a set of improvement plans. On April 30, 1968, Potrero notified Western that it had forwarded the requested documents. The trial court concluded that Western became obligated on May 10, 1968, to pay to Potrero $29,515.53, and for the failure to make the payment, awarded judgment in that amount with interest at the legal rate of 7 percent per annum from May 10, 1968.

Subsequently on August 26, 1968, Western notified Potrero that it would not make any payment because it was relieved under "Article D" by reason of the fact that there had been a trustee sale on August 15, 1968. Potrero filed its first complaint on October 15, 1968, seeking specific performance of the deposit of funds. Due to the lapse in time, new bids were received in December 1968, and the contract for the construction of the road was let in January 1969.

On April 1, 1969, Potrero filed its first amended complaint for specific performance of the deposit provision and for fraud and deceit in the execution of "Article D." The subject portion of Kimber Road was finally completed in the Fall of 1970.

Western's position is that the judgment must be reversed because "the evidence does not support the recovery." In essence, this amounts to a claim that "Article D" was obtained without fraud or deceit, and that said clause operated to relieve Western of its duty to pay for the road. We have concluded that the facts, as they occurred, did not bring "Article D" into operation, and, therefore, when Potrero performed its obligations under the contract, Western had a duty to pay for its agreed share of the cost of Kimber Road.

### JUDGMENT FOR DAMAGES

Western's first contention is that the judgment for damages cannot be supported by a finding of breach of contract because Potrero's first cause of action sounds in specific performance and not in damage at law. The fact that the complaint sought equitable relief is not a bar to a judgment for damages. Where the complaint and prayer are drawn in the form of an equitable action, but equitable relief is for some reason not available, damages should be awarded if the facts pleaded otherwise justify legal relief. (*Walsh* v. *Macaire,* 102 Cal.App.2d 435, 438-440 [227 P.2d 517]; *Tomas* v. *Vaughn,* 63 Cal.App.2d 188, 192-193 [146 P.2d 499].)

When Potrero filed its action it had not yet constructed the road and so the only obligation that Western had breached at that time was that of depositing the money. However, by the time of trial the road had been constructed and so the case was tried on the theory that the action was one for damages.

A party is entitled to any and all relief which may be appropriate under the scope of his pleadings and within the facts alleged and proved, irrespective of the theory upon which the facts were pleaded, the title of the pleading, or what relief was sought by the prayer. (*Estrin* v. *Superior Court,* 14 Cal.2d 670, 676-678 [96 P.2d 340].)

The allegation of the failure to make the required deposit is a sufficient allegation of damage to support a judgment for damages under the circumstances present here. (*City of Buena Park* v. *Boyar,* 186 Cal.App.2d 61, 65 [8 Cal.Rptr. 674].) It necessarily follows, therefore, that whether the first cause of action is characterized as legal or equitable in nature, the pleadings were sufficient to support the judgment which was rendered.

Since the judgment rendered was one at law, the equitable defenses raised by Western are not appropriate.

## PERFORMANCE OF CONDITIONS PRECEDENT

Western next contends that Potrero did not perform all conditions precedent required of it under the terms of the agreement in order to raise a duty to make the deposit. Returning to the terms of the contract, we find that "Article B" requires Potrero to grant the public road easement of Kimber Drive, deliver a temporary slope construction easement, and notify Western that it is "ready to construct the improvement."

Western admits that Potrero satisfied the first two of these requirements. As to the notice requirement, Western contends "that the agreement must be construed as requiring more than an administerial act on Potrero's part—it must be in fact ready to construct the road." We do not agree.

Western is asking this court to rewrite the contract when it contends that "ready to construct" means that Potrero must already have had the contract let. The agreement contains no mention of any requirement that Potrero possess executed construction contracts before advising Western of its readiness to proceed even though specific mention is made of Western's right to inspect bids and approve the plans and specifications for the contemplated improvement.

It is apparent from the time sequence set by the contract for the various performances that Potrero desired to assure itself of payment through a deposit of the estimated construction costs before it had irrevocably obligated itself to third parties through the execution of a construction contract.

"Article B" clearly requires only that Potrero notify Western of its readiness to construct the road. If, in fact, Potrero was not "ready to construct the improvements" when it gave notice to that effect, it would be subjecting itself to a breach of contract action since "Article A" requires it to complete construction of the road within 90 days of the deposit of the funds by Western. This is the assurance of readiness that Western bargained for and so it is all to which it is entitled.

Western next contends that the trial court erred in not interpreting "Article D" of the agreement as a complete defense to the cause of action for breach of contract. It points out that on August 15, 1968, as a result of the trustees' sale, some person other than Western owned the property, and, as of that date, it had not yet deposited funds with Potrero in accordance with the agreement.

The words of "Article D"—"before Western has deposited funds with Potrero in accordance with Article B"—can only mean "before Western is required under Article B to deposit the funds with Potrero." Any other interpretation would allow Western to totally escape its obligations until such time as it was compelled, by legal process, or otherwise, to physically make the deposit required of it by the contract. Where "procrastination by the promisor would delay the accrual date of his own obligation" (*Erskine* v. *Upham*, 56 Cal.App.2d 235, 246 [132 P.2d 219]), the fundamental tenet that a "person cannot take advantage of his own act or omission to escape [contract] liability" (*Rains* v. *Arnett*, 189 Cal.App.2d 337, 347 [11 Cal.Rptr. 299]), has been violated.

The next contentions of Western which it advances in an attempt to excuse its breach are denominated "[f]ailure of consideration" and "[l]acks mutuality of remedy." These arguments amount to a claim that the contract is unenforceable for want of sufficient consideration. Western reasons that since Potrero was obligated to construct Kimber Road by reason of the fact that it had filed tentative tract map 1928-1, its promise to construct the road upon Western's demand was not a legal detriment.

A case in point on the issue of preexisting legal duty under the facts of the instant action is *World Sav. & Loan Assn.* v. *Kurtz Co.,* 183 Cal. App.2d 319, 326-327 [6 Cal.Rptr. 665]. There the court stated: "Appellant also asserts that the plaintiff and its predecessors in interest were obligated to construct and install the Lassen Street sewer line as a condition of the approval of their subdivision map by the city and there was, therefore, no consideration for the defendant's promise to pay its share of the cost thereof. There is substantial evidence in the record to the effect that the defendant received a benefit from the Lassen Street sewer line as constructed by the plaintiff. The defendant in constructing its tract did so, so as to take advantage of the sewer line on Lassen Street. The plaintiff suffered a detriment in that it waived and relinquished its right to delay any subdivision of its land until the defendant started subdividing and thereby putting itself into a position to take advantage of any installation of any sewer line in Lassen Street by the defendant and without any contribution to the costs of such sewer line.

"The trial court could well have determined from the evidence that 'the right or the ability of either the plaintiff or the defendant to await the commencement of subdivision by the other before undertaking any subdivision activity of its own in order to obtain the advantage of the installation of sewer lines and streets by the other necessarily incident to the other's subdivision which could be availed of without contributing to the

cost thereof, and the relinquishment and waiver of this right through the means of the agreement between the parties, . . . constitutes [a] real and substantial consideration that supports the agreement.' The foregoing of a legal right constitutes a consideration for the contract if the minds of the parties meet on the relinquishment of the right as a consideration. In this case there was such evidence of such a meeting of the minds."

■ Prior to filing its final subdivision map, Potrero had no duty to construct subdivision improvements. Potrero's obligation to construct those improvements would arise only when the final map was filed. (Bus. & Prof. Code, §§ 11511, 11611, 11612.) Until that filing, Potrero could have permitted its property to remain unimproved.

By its promises to Western embodied in this contract, Potrero committed itself to constructing the improvements within a definite time period to be designated by Western. ■ Since the consideration was sufficient at the time the agreement was entered into, the fact that Western subsequently lost the property and would not benefit from Potrero's performance does not affect or impair the sufficiency of that consideration. (*Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386].)

This disposition makes unnecessary a consideration of Western's contentions attacking the findings of fact and conclusions of law relating to fraud and deceit.

The judgment is affirmed.

Kaus, P. J., and Cole, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.